# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JUNE SESSION, 1997

FILED

July 23, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

DAVID WAYNE BRITT,    )    C.C.A. NO. 02C01-9607-CC-00224
)
    Appellant,    )
)
)    HARDEMAN COUNTY
VS.    )
)    HON. JON KERRY BLACKWOOD
STATE OF TENNESSEE,    )    JUDGE
)
    Appellee.    )    (Post-Conviction)

## ON APPEAL FROM THE JUDGMENT OF THE
## CIRCUIT COURT OF HARDEMAN COUNTY

FOR THE APPELLANT:

GARY F. ANTRICAN
District Public Defender

C. MICHAEL ROBBINS
Assistant Public Defender
P.O. Box 700
Somerville, TN 38068

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

CLINTON J. MORGAN
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

ELIZABETH RICE
District Attorney General
302 Market Street
Somerville, TN 38068

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# **OPINION**

The Petitioner, David Wayne Britt, appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure from the trial court's denial of his petition for post-conviction relief. On April 9, 1990, the Petitioner pleaded guilty to first-degree murder, conspiracy to commit first-degree murder, and possession of a deadly weapon with the intent to employ it in the commission of an offense. Upon the recommendation of the district attorney general, the trial court sentenced him to life imprisonment for first-degree murder, three years for conspiracy to commit first-degree murder, and one year for possession of a deadly weapon with the intent to employ it in the commission of an offense. The Petitioner was classified as a Range I standard offender, and his sentences were ordered to run concurrently. He filed a pro se petition for post-conviction relief on April 27, 1994, which was amended with the assistance of counsel on January 2, 1996, and again on February 6, 1996. In his petition for post-conviction relief, the Petitioner argued that he was denied effective assistance of counsel at his guilty plea proceeding. After conducting an evidentiary hearing, the trial court found that the Petitioner had received effective assistance of counsel and denied the petition. We affirm the judgment of the trial court.

Initially, we note that the procedural history of this petition indicates that it was originally dismissed as having been barred by the three-year statute of limitation. See Tenn. Code Ann. § 40-30-102 (repealed 1995). On July 26, 1995, the dismissal of the petition was reversed on appeal to this Court. See State v. David Wayne Britt, C.C.A. No. 02C01-9410-CC-00234, Hardeman County (Tenn.

Crim. App., Jackson, July 26, 1995) (holding that the statute of limitation was tolled while the Petitioner was a minor pursuant to Tennessee Code Annotated section 28-1-106). Upon remand to the trial court, the Petitioner was appointed counsel, amended the original petition, and received an evidentiary hearing.

The only evidence concerning the circumstances of the offenses comes from a stipulation of facts which was read into the record at the Petitioner's guilty plea proceeding. That stipulation reveals that the Petitioner became romantically involved with a teacher's assistant, Brenda Diane Oakley, at the Wilder Youth Development Center in 1989. He was sixteen years old at the time and Oakley was thirty-eight years old. According to the Petitioner, Oakley made allegations that she had been abused by her husband. She indicated that she wanted to be with the Petitioner and that the only way she could do so was for him to kill her husband. The Petitioner eventually came to believe her and did not want to lose her affections.

According to the Petitioner, Oakley devised plans for the killing of her husband. She provided a map of the route to her home and details about the layout of the house. When the Petitioner did not follow through with the first plan, Oakley was not pleased. She informed him that unless her husband was eliminated as soon as possible, their love affair was over. As a result, the Petitioner made arrangements to kill her husband.

The Petitioner arranged for a friend to drive him to Somerville, the location of the Oakley home, on September 30, 1989. He acquired a .22 caliber rifle and brought it with him. He concealed the true purpose of his having the gun from his

friends.  They drank some beer on the way to Somerville.  Once they arrived in Somerville, the Petitioner instructed his friends to drive by the Oakley home in order "to check out the situation."  Satisfied with the situation, the Petitioner instructed his friends where to park and wait for him.  He put on a mask and rubber gloves and approached the Oakley home.  He found the door unlocked and entered the house.  According to the Petitioner, Diane Oakley was awake and knew of his presence.  Her husband stirred from his sleep, apparently realizing that someone was in the room, and the Petitioner shot him in the head.

After the shooting, the Petitioner and Oakley embraced.  He then took steps to make the shooting appear to be part of a robbery, including binding Oakley with cloth he had brought and taking her diamond pendant.  He left the house running and joined his friends where they had parked to await him.  They drove away and the Petitioner later took steps to cover up the crime.  In all, the crime had taken place in the format which he and Oakley had planned and discussed several times.

Law enforcement authorities soon suspected the Petitioner of being involved in the shooting.  He eventually confessed to the crime.  As a result, he was indicted on the charges to which he pleaded guilty on April 9, 1990.  He filed a petition for post-conviction relief on April 27, 1994.  After conducting an evidentiary hearing on March 8, 1996, the trial court denied the petition.  It is from the trial court's order of denial that the Petitioner now appeals.

In his petition, he argued that his attorneys at the guilty plea proceeding, Jack Hinson and Tom Anderson, rendered ineffective assistance of counsel in

three respects. The Petitioner first contended that his attorneys encouraged him to plead guilty to first-degree murder but did not correctly advise him of the alternatives to or consequences of doing so. Second, he contended that his attorneys were ineffective in that they did not discuss and pursue a defense based on his being under the influence of drugs and alcohol at the time of the offense. Third, he contended that attorney Tom Anderson was ineffective in that he had a conflict of interest arising from a previous matter concerning the Petitioner.

Both Jack Hinson and Tom Anderson testified at the post-conviction hearing. Hinson stated that he had handled a matter involving the Petitioner in the past. As a result, the Petitioner's mother, Helen Overman, contacted him upon the Petitioner's arrest for the Somerville murder. Hinson met with the Petitioner and was then hired by Overman to represent him. She paid a five thousand dollar ($5000) retainer fee at that time. Hinson soon realized that he would need the help of a more experienced attorney for this difficult murder trial. He contacted Tom Anderson for that reason. Anderson met with Hinson, the Petitioner and Overman to discuss the case. Although neither Hinson nor Anderson recalled specific details discussed during their meetings with Overman and the Petitioner, it was clear to both attorneys that Overman and the Petitioner agreed to Anderson's association on the case. Anderson and Hinson agreed to split the retainer fee and, according to them, they were paid no additional money by Overman. The Petitioner was later declared indigent, and Hinson and Anderson were appointed to represent him.

The record reveals that Anderson sat as a special judge on a juvenile matter involving the Petitioner approximately two years prior to his arrest on the murder charge. On that occasion, Anderson entered an order committing the Petitioner to the supervision of the Department of Correction for six counts of larceny. At the post-conviction hearing, Anderson testified that he did not remember committing the Petitioner at the time he became associated with Hinson for the murder trial. In fact, the Petitioner reminded Anderson of that proceeding during one of their meetings and laughed about it. According to both Hinson and Anderson, neither the Petitioner nor Overman objected to Anderson's participation in the murder trial because of the prior commitment proceeding.

Both Hinson and Anderson were aware that the Petitioner had consumed alcohol on the trip to Somerville. Neither attorney recalled any mention of drug use by the Petitioner. Because of the Petitioner's precise actions in following the plan to murder Mr. Oakley, neither attorney believed that a defense suggesting that the Petitioner could not have formed the requisite mental state for first-degree or second-degree murder because of the influence of alcohol would be successful. Accordingly, they decided that alcohol would not be a major factor in their defense of the Petitioner.

Instead, the principal theory of defense would be that the adolescent Petitioner was manipulated by the older Diane Oakley into committing the offense. They hoped to show that Oakley was the impetus behind the commission of the offense and to portray the Petitioner as having been used by her. Given that the Petitioner had confessed to the the crime and their motion to

suppress the confession had been denied, both attorneys agreed that the best outcome they could likely hope for was a conviction for second-degree murder.

The Petitioner's trial was set for Monday, April 9, 1990. By that time, his attorneys had already filed several pretrial motions, some of which had been successful (such as the motion to change venue) and some of which had been denied (such as the motion to suppress the Petitioner's confession). Hinson and Anderson testified that they were prepared to go to trial. They had completed discovery and preparation of their defense and had issued subpoenas for the trial. On April 6, 1990, Overman called the attorneys and indicated that the Petitioner wanted to plead guilty. Overman requested that they contact the district attorney general's office to discuss that possibility. Hinson and Anderson went to visit the Petitioner to confirm his wishes. They advised him not to plead guilty. They informed him of the ranges of punishment for first-degree and second-degree murder and explained that it would not be in his best interest to plead guilty to first-degree murder. The Petitioner decided that he wanted to do so anyway.

As a result, the attorneys contacted the district attorney general's office and relayed the Petitioner's intention to plead guilty. The district attorney general agreed to recommend that the Petitioner's sentences run concurrently. On April 9, 1990, the date originally set for trial, the Petitioner pleaded guilty to first-degree murder, conspiracy to commit first-degree murder, and possession of a deadly weapon with the intention to employ it in the commission of an offense. At the guilty plea proceeding, both the Petitioner and Overman specifically noted that his attorneys had advised him not to plead guilty. It appears that the Petitioner

discussed pleading guilty with his family and came to a decision that it would be the best thing for him to do. The Petitioner himself stated, "I'd like to say I'm sorry for what happened and I feel like pleading guilty will take away any grief off the family and my family and I'd like to ask for forgiveness from the Oakley family for what's happened." The trial court fully advised the Petitioner of his rights and the consequences of pleading guilty. The Petitioner, Overman, and his attorneys discussed the guilty plea forms in a private room just outside the courtroom. They all signed the forms before returning to court to enter the pleas.

The record indicates that Jack Hinson had been practicing law for a year and a half when he was retained by Helen Overman to represent the Petitioner for the Somerville murder. He had handled several small criminal cases, some by appointment and others by retainer. Tom Anderson had been practicing law for nine and a half years at the time of the Petitioner's murder arrest. He had handled numerous criminal cases, including jury trials and guilty pleas. He and Hinson had agreed that Anderson was to serve as lead counsel for the Petitioner's murder trial.

The Petitioner testified in his own behalf at the post-conviction hearing. He stated that he learned that his mother had hired Hinson to be his attorney in October of 1989. A few weeks after meeting with Hinson, Anderson joined the case. Neither Hinson nor Anderson ever spoke with him about consenting to Anderson's participation in the case. During discussions about the case, the Petitioner informed his attorneys that he had been under the influence of both alcohol and LSD at the time of the offenses. Hinson and Anderson told the Petitioner that the influence of drugs and alcohol did not matter. The Petitioner

-8-

testified that the attorneys spoke about a plea more than they ever discussed going to trial or trial strategy. According to the Petitioner, Hinson and Anderson advised him to plead guilty. They informed him that he would serve less time if he pleaded guilty to first-degree murder than if he went to trial and was convicted of second-degree murder. Hinson and Anderson told the Petitioner that the district attorney general was asking for an eighty-year sentence and that the trial judge usually agreed to what the prosecutor recommended. The Petitioner testified that he was not informed about the possible minimum and maximum sentences for his offenses. He stated that the advice given by his attorneys played a large role in his decision to plead guilty.

On cross-examination, the Petitioner stated that he had lied during the guilty plea proceeding when the trial judge asked him if anyone had told him about how much time he would serve in prison before being released. In addition, he had inaccurately reported the reasons for his pleading guilty. The Petitioner also admitted that he never said that he did not want Anderson participating in his defense.

The Petitioner's mother, Helen Overman, testified at the post-conviction hearing. She stated that, in addition to the five thousand dollar ($5000) retainer fee, she paid an additional two thousand dollars ($2000) at some later time. She did not, however, have a receipt for this payment. Although she remembered Anderson from the prior juvenile commitment proceeding, she simply trusted Hinson's judgment with regard to his association. Overman testified that she was distracted at the time because her granddaughter was very ill. According to Overman, Hinson and Anderson told her that if the Petitioner went to trial and

was convicted he would receive an eighty-year sentence, whereas if he pleaded guilty he would be released from prison in nine or ten years. Overman stated that the Petitioner never expressed any desire to plead guilty before his attorneys advised him to do so. She testified that the attorneys told her and the Petitioner that it was in his best interest to plead guilty.

On cross-examination, Overman admitted that she was never so dissatisfied with the performance of Hinson and Anderson that she asked for either of them to be taken off the case. She also admitted that she lied at the guilty plea proceeding regarding the Petitioner's desire to plead guilty, but stated that she did so because of pressure exerted by the attorneys.

Steven Britt, the Petitioner's brother, also testified at the post-conviction hearing. He stated that he was present during the meeting in the private room next to the courtroom prior to the Petitioner's entry of his guilty pleas. During that meeting, the Petitioner's attorneys advised him that it would be in his best interest to plead guilty. They informed the Petitioner that if he went to trial and was convicted, he would receive a longer prison sentence than if he pleaded guilty.

After the hearing, the trial court denied the petition and entered written findings of fact and conclusions of law. The order of denial indicates that the trial court found the testimony of Hinson and Anderson to be credible. As a result, the trial court concluded that the Petitioner acquiesced in the participation of Anderson in his defense even though Anderson had previously served as a special judge in a juvenile matter relating to him. The trial court further concluded that the decision to enter guilty pleas was the Petitioner's and that his attorneys

had advised him not to plead guilty. Accordingly, the trial court denied the petition, stating that Hinson and Anderson had provided effective assistance of counsel. The Petitioner then appealed to this Court.

In determining whether or not counsel provided effective assistance at trial, the court must decide whether or not counsel's performance was within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975). To succeed on a claim that his counsel was ineffective at trial, a petitioner bears the burden of showing that his counsel made errors so serious that he was not functioning as counsel as guaranteed under the Sixth Amendment and that the deficient representation prejudiced the petitioner resulting in a failure to produce a reliable result. Strickland v. Washington, 466 U.S. 668, 687, reh'g denied, 467 U.S. 1267 (1984); Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). To satisfy this second prong the petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When reviewing trial counsel's actions, this court should not use the benefit of hindsight to second-guess trial strategy and criticize counsel's tactics. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Counsel's alleged errors should be judged at the time it was made in light of all facts and circumstances. Strickland, 466 U.S. at 690; see Cooper, 849 S.W.2d at 746.

-11-

This two part standard of measuring ineffective assistance of counsel also applies to claims arising out of the plea process. Hill v. Lockhart, 474 U.S. 52 (1985). The prejudice requirement is modified so that the petitioner "must show that there is a reasonable probability that, but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

We note that under the provisions of the applicable Post-Conviction Procedure Act, a petitioner bears the burden of proving the allegations in the petition by a preponderance of the evidence. See McBee v. State, 655 S.W.2d 191, 195 (Tenn. Crim. App. 1983). In addition, the factual findings of the trial court are conclusive on appeal unless the evidence in the record preponderates against them. State v. Buford, 666 S.W.2d 473, 475 (Tenn. Crim. App. 1983).

With regard to the Petitioner's first contention, that his attorneys encouraged him to plead guilty to first-degree murder but did not correctly inform him of the ranges of punishment of the various possible offenses, we believe that the Petitioner has failed to establish that Hinson and Anderson's representation was constitutionally deficient. It is true, as the Petitioner asserts, that the trial court at the guilty plea proceeding incorrectly advised the Petitioner that the applicable range of punishment for second-degree murder under the law as it existed at the time of the offenses was ten to thirty years imprisonment.[1] In fact, the applicable range of punishment at that time was ten to thirty-five years imprisonment. See Tenn. Code Ann. §§ 39-2-212, 40-35-109(a) (1982). It is

---

[1] The trial judge informed the Petitioner of the range of punishment for second-degree murder as part of his discussion to ensure that the Petitioner fully understood the pleas which he was seeking to enter and their consequences. The trial judge advised the Petitioner that if he went to trial he might be convicted of a lesser included offense, such as second-degree murder, which carried a lighter sentence than first-degree murder.

also true that neither Hinson nor Anderson brought the trial court's error to the attention of the Petitioner. Yet both Hinson and Anderson testified at the post-conviction hearing that they had personally informed the Petitioner of the correct ranges of punishment for all of the offenses for which the Petitioner might have been convicted prior to the guilty plea proceeding. Of course, the Petitioner testified that his attorneys had not informed him of the possible ranges of punishment. After hearing the testimony and evaluating the credibility of the witnesses, the trial judge specifically found Hinson's and Anderson's testimony to be persuasive. We cannot conclude that the evidence preponderates against the trial court's findings.

Moreover, the testimony of Hinson and Anderson, accredited by the trial court, reveals that they specifically advised the Petitioner not to plead guilty. Pleading guilty was the Petitioner's own decision based on his personal reasons. The trial court's incorrect statement of the possible range of punishment for second-degree murder could only have made going to trial, with the potential for a second-degree rather than first-degree murder conviction, more attractive than if the correct range had been stated. The Petitioner elected to plead guilty nonetheless. From our review of the record, we can only conclude that the Petitioner has failed to demonstrate either that his attorneys provided deficient representation in this regard or that their representation prejudiced him. Accordingly, his first contention lacks merit.

With regard to the second contention, that Hinson and Anderson were ineffective for failing to pursue and discuss with the Petitioner a diminished capacity type of defense based on alcohol and drug consumption, we again

believe that the Petitioner has failed to establish that the performance of his attorneys was constitutionally deficient. Hinson and Anderson testified at the post-conviction hearing that they discussed the Petitioner's consumption of beer prior to the offenses but that he did not inform them of any drug use on the date of the offenses. As far as alcohol consumption, Hinson and Anderson agreed that the alcohol's effect on the Petitioner's mental state would play only a minor role in their defense because the circumstances of the offense rebutted any indication that the Petitioner was impaired. The facts stipulated to at the guilty plea proceeding reveal that the offense was deliberately planned and precisely carried out by the Petitioner. The Petitioner has offered no credible evidence to refute those facts. From this record, we can only conclude that Hinson and Anderson's tactical decision that the consumption of alcohol and its effect on the Petitioner's mental state would play a minor role in their theory of defense was fully supported by the facts of the case and was within the range of competence demanded of attorneys in criminal cases. The second contention is without merit.

With regard to the third contention, that Anderson was ineffective in that he had a conflict of interest due to his service as a special judge on a prior juvenile matter involving the Petitioner, we believe that the Petitioner has failed to demonstrate that he was prejudiced in any way by Anderson's representation, regardless of his previous service as a special judge. Both Hinson and Anderson testified at the post-conviction hearing that the Petitioner was aware of Anderson's prior service as a special judge and that he agreed to Anderson's association in the murder case. The trial court specifically found their testimony to be credible and concluded that the Petitioner had acquiesced in Anderson's participation in his defense. Furthermore, as we pointed out above, the trial court

found that the Petitioner had made a voluntary, personal decision to plead guilty against the advice of his attorneys. The transcript of the guilty plea proceeding clearly confirms Hinson's and Anderson's testimony, accredited by the trial court, that they advised the Petitioner not to plead guilty. The Petitioner has not alleged any manner in which Anderson's prior duties as a special judge or representation in the murder case contributed to his decision to plead guilty or that he would not have done so had the situation been otherwise. We fail to see any prejudice inuring to the Petitioner as a result of Anderson's representation. The third contention is without merit.

For the reasons set forth in the discussion above, we conclude that the Petitioner has failed to demonstrate that the trial court erred in denying the petition for post-conviction relief. We therefore affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE

CONCUR:


_____
JOHN H. PEAY, JUDGE


_____
JOE G. RILEY, JUDGE