**Robert C. BUTLER, Petitioner–Appellee,**

v.

**STATE of Tennessee,
Respondent–Appellant.**

Supreme Court of Tennessee,
at Knoxville.

May 7, 1990.

Richard A. Hamra, II, Robert W. Ritchie, Knoxville, for petitioner-appellee.

Charles W. Burson, Atty. Gen. & Reporter, Kathy M. Principe, Asst. Atty. Gen., Nashville, William E. Dossett, Dist. Atty. Gen., Robert L. Jolley, Jr., Asst. Dist. Atty. Gen., Knoxville, for respondent-appellant.

## OPINION

DROWOTA, Chief Justice.

This is a post-conviction proceeding in which the sole issue presented is whether Petitioner was deprived of his constitutional right to effective assistance of counsel. After an evidentiary hearing in 1985, the trial court dismissed the petition. Reversing the trial court and granting the petition, the Court of Criminal Appeals vacated the judgment of conviction and the sentence and remanded the cause for a new trial. We now reverse the Court of Criminal Appeals and reinstate the judgment of conviction and sentence.

In September 1977, Petitioner, Robert Butler, a black doctoral candidate in sociology at the University of Tennessee at Knoxville, was convicted of rape and sen-

tenced by the jury to life imprisonment. Three months earlier Petitioner's trial on the same charges had resulted in a mistrial because of the jury's failure to agree. The same attorney represented Petitioner at both trials. On appeal, his conviction and sentence at the second trial were affirmed.

The proof at the second trial showed that the victim was an eighteen-year-old white female student enrolled in a sociology class taught by Petitioner. On October 7, 1976, Petitioner allowed the victim to take a test in his office on the day before the test was scheduled so that the victim could leave school early to visit her parents.

After the victim finished the test, she accepted Petitioner's invitation to participate with him in an undefined "experiment." Petitioner placed two chairs facing each other inside an office closet and had the victim sit in one while he sat in the other. The closet door was closed and the closet was completely dark. Petitioner threatened the victim with violence and, holding a sharp object he said was a knife at her throat, forced her first to perform fellatio on him and then to engage in sexual intercourse. Petitioner then allowed the victim to leave. Returning to her dormitory, she told her roommate what had occurred and, upon her roommate's advice, reported the offense to the University police. An officer took her to the University Hospital, where she was examined and released. One of the officers who had accompanied the victim to the hospital testified that she had observed a discoloration resembling a pressure mark on the victim's neck. The doctor who had examined the victim, however, did not testify at the trial.

Petitioner's theory was that the sexual relations had been consensual. He himself did not testify. The only witness for the defense was a graduate student who testified that, when she had seen Petitioner an hour or so after his encounter with the victim, he was behaving normally.

On post-conviction it has been Petitioner's theory, accepted by the majority of the Court of Criminal Appeals, that the failure of defense counsel to present the testimony of the doctor who had examined the victim at the University Hospital after the rape, coupled with counsel's failure to have Petitioner testify as a witness in his own behalf, after announcing to the jury on voir dire that Petitioner would testify, constituted ineffective assistance of counsel. Both the doctor, as a witness for the State, and Petitioner had testified at the first trial. The majority of the Court of Criminal Appeals therefore concluded that counsel's "significant change in strategy" at the second trial "constituted a deficiency in performance that resulted in prejudice to the Petitioner on the issues of guilt or punishment."

■ The standards by which ineffectiveness of counsel is judged in Tennessee are set forth in *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn.1975), which requires that the advice given, or the services rendered by the attorney, be within the range of competence demanded of attorneys in criminal cases. The rule devised by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), provides:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless the defendant makes both showings, it cannot be said that the conviction or ... sentence resulted from a breakdown in the adversary process that renders the result unreliable:

■ The findings of fact of the trial judge on post-conviction hearings are conclusive on appeal unless the evidence preponderates against the judgment. *Vermilye v. State*, 754 S.W.2d 82, 84 (Tenn.Cr.

App.1987); *Turner v. State*, 698 S.W.2d 90, 91 (Tenn.Cr.App.1985); *Janow v. State*, 4 Tenn.Cr.App. 195, 470 S.W.2d 19, 21 (1971). A review of the record in this case does not convince us that the proof preponderates against the judgment entered by the trial court denying post-conviction relief.

■ As to the allegation of ineffective assistance of counsel stemming from counsel's failure to have Petitioner testify, the proof clearly does not preponderate against the trial court's decision. Review of the transcripts of both trials confirms the opinions of the post-conviction trial judge, who also presided at both trials, and of the dissenting member of the Court of Criminal Appeals that the proof at the first trial was much stronger for the State's theory than that presented at the second trial. This was caused in large part by defense counsel's decision, in which there is proof Petitioner concurred, that Petitioner not testify at the second trial.

Review of the transcripts of both trials also confirms the trial judge's conclusion that Petitioner did not "make a good witness" at the first trial. In addition, his testimony opened the door to very damaging rebuttal testimony. For example, at the first trial the victim had testified that Petitioner had maneuvered her into a position of vulnerability by convincing her to engage in an "experiment" he implied he had previously performed with other students. Petitioner then testified that the victim, not he, had initiated intercourse. He denied asking the victim to participate in any experiment or having previously conducted "suggestive" experiments with other young female students concerning their sexual activities.

On rebuttal the State presented the testimony of two of Petitioner's former students with whom he had conducted experiments very similar to that the victim had described. None of these experiments had led to sexual intercourse, but the similarity of the incidents to that described by the victim made the testimony extremely damaging to Petitioner. At the second trial it is clear that the State intended to present these same rebuttal witnesses as well as a third witness, who would have testified that Petitioner had threatened her with a knife, an element missing from the rebuttal testimony at the first trial.

During cross-examination of Petitioner at the first trial the State had also elicited admissions that he had prepared and initiated the sending of form letters to the victim's family and neighbors requesting the victim take psychiatric and polygraph tests, suggesting that the victim had been having an affair with a married man, and remarking that for the family's safety he hoped the victim was telling the truth. The admission of these letters remained a threat to Petitioner upon the second trial. From this it can be seen that defense counsel's decision to forego Petitioner's testimony at the second trial did not violate the standards of *Baxter v. Rose* and/or *Strickland v. Washington.* This was an informed tactical decision which will not be second-guessed by this Court. *See generally Hellard v. State*, 629 S.W.2d 4, 9–12 (Tenn.1982).

Petitioner suggests that counsel's statements to prospective jurors during voir dire indicating that Petitioner would testify coupled with the failure to put Petitioner on the witness stand constitute ineffective assistance of counsel. These statements were not extensive. They did not state as a certainty nor were they a promise that the Petitioner would testify. *Compare Anderson v. Butler*, 858 F.2d 16 (1st Cir. 1988). At times, in fact, counsel indicated that Petitioner might not testify. As a witness at the post-conviction hearing, Petitioner's trial counsel stated that he had deliberately mentioned that Petitioner might testify in order to trick the prosecution into withholding from its case in chief damaging evidence, such as the threatening letters sent to the victim's family and the "experiments" conducted with other students. The State's handling of these matters at the second trial plainly shows the success of this strategy. Like the deci-

sion not to present Petitioner as a witness, counsel's references on voir dire to Petitioner's possible testifying was a tactical decision and did not deprive Petitioner of his constitutional right to effective assistance of counsel.

■ A more substantial problem is counsel's failure to present the testimony of Dr. Winn Henderson, the emergency room physician who had examined the victim and had testified for the State at the first trial. Dr. Henderson had testified that the victim had no physical complaints at the time he examined her, that the vaginal samples he took were positive for sperm, and that he did not examine the back of the Plaintiff's neck because of time limitations and the absence of any specific complaint by the victim about that area of her body. Dr. Henderson stated he made no significant findings on "the major portion" of the victim's body. There were no abnormal findings, such as tearing of tissue or bleeding, shown by the pelvic examination.

At the second trial Officer Phillips of the University police testified, as she had at the first trial, that after the doctor's examination, she had noticed a small red mark, an inch or less in length, resembling a pressure mark, on the right side of the victim's neck. Otherwise, at the second trial the State did not in any way contend that the victim had been physically injured as a result of the rape. The State's theory was not that the rape had been accomplished by violence but by threats of violence. The State did not call Dr. Henderson and he was not present at the trial.

Petitioner's trial counsel testified that he had spoken with Henderson before the second trial and the doctor had given every indication he would be testifying. Counsel did not, however, subpoena Henderson for the second trial. The proof indicates instead that the State had subpoenaed the doctor but that, when defense counsel discovered during the second trial that Dr. Henderson was not present, he learned that the doctor had been released from his subpoena and could no longer be located.

The trial court found that defense counsel had not failed to adequately interview Dr. Henderson since his knowledge concerning the case had been fully examined at the previous trial. In the court's opinion there was no need to interview Dr. Henderson between trials since both Petitioner and his counsel were fully aware of what the doctor knew. The court further found that defense counsel's decision whether Dr. Henderson should testify was "part of a consistent trial strategy" and that the "presentation of this witness was not necessary to the defense theory at the second trial." The proof does not preponderate against these findings.

Even if counsel did not perform within the range of competence demanded of attorneys in criminal cases when he failed to assure Dr. Henderson's presence as a witness if his testimony had become necessary, Petitioner has not shown the prejudice required to grant relief. There is no showing of a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *See Strickland v. Washington, supra,* 104 S.Ct. at 2067–2068; *Vermilye v. State, supra,* 754 S.W.2d at 84; *Williams v. State,* 599 S.W.2d 276, 279 (Tenn.Crim. App.1980). The testimony of Dr. Henderson did not exonerate the Petitioner or diminish the credibility of the State's witnesses as did the testimony of the witnesses not presented in the cases cited by Petitioner. *E.G. State v. Buford,* 666 S.W.2d 473 (Tenn.Crim.App.1983); *Nealy v. Cabana,* 764 F.2d 1173 (5th Cir.1985); *Jackson v. McKaskle,* 729 F.2d 356 (5th Cir.1984); and *Wilson v. Cowan,* 578 F.2d 166 (6th Cir.1978). In fact, Dr. Henderson's testimony was consistent with the assertions of the victim that she was not physically harmed and to some extent strengthened the State's case by corroborating with objective evidence the fact that sexual intercourse had occurred, a fact the State had proved only by the victim's statements. Furthermore, Dr. Henderson's testimony contradicted no one's theory of the case; and, since the State's theory was that

Petitioner had forced the victim to engage in sexual relations by threats of violence, the doctor's testimony was consistent with the position of either the State or Petitioner. Clearly the failure to present the doctor's testimony, if deficient performance, was not prejudicial.

Petitioner insists that the cumulative effect of counsel's not calling Petitioner and Dr. Henderson as witnesses was to leave him without any proof of his defense. At the conclusion of the State's case in chief, however, counsel was faced with the choice of leaving undisturbed the essentially uncorroborated assertions of the victim or of opening the door to the damaging cross-examination and rebuttal with which he knew the State would respond. Neither course was ideal. We reiterate that counsel's handling of this dilemma did not deprive Petitioner of his constitutional right to effective assistance of counsel.

We have not addressed Petitioner's claim of counsel's ineffective conduct of voir dire because it was raised for the first time on appeal. We agree with the majority of the Court of Criminal Appeals that this issue has been waived because it was not litigated in the trial court.

The judgment of the Court of Criminal Appeals setting aside the judgment of conviction and remanding for a new trial is reversed. The petition for post-conviction relief is dismissed. Costs are assessed against the Petitioner–Appellee.

FONES, COOPER and HARBISON, JJ., concur.

O'BRIEN, J., not participating.