**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT KNOXVILLE**

**OCTOBER SESSION, 1997**

FILED

December 23, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **EDDIE CURT DAVIS,** | ) | **C.C.A. NO. 03C01-9702-CR-00064** |
| | ) | |
| Appellant, | ) | |
| | ) | |
| | ) | **HAMILTON COUNTY** |
| **VS.** | ) | |
| | ) | **HON. STEPHEN M. BEVIL** |
| **STATE OF TENNESSEE,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Post-Conviction) |

**ON APPEAL FROM THE JUDGMENT OF THE
CRIMINAL COURT OF HAMILTON COUNTY**

FOR THE APPELLANT:

KENNETH F. IRVINE, JR.
606 W. Main Street, Suite 350
P.O. Box 84
Knoxville, TN 37901-0084

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

PETER M. COUGHLAN
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

BILL COX
District Attorney General

BATES BRYAN, JR.
Assistant District Attorney General
Court Building
600 Market Street
Chattanooga, TN 37402

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Petitioner, Eddie Curt Davis, appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure from the trial court's denial of his petition for post-conviction relief. On November 30, 1990, a Hamilton County jury found the Petitioner guilty of two counts of aggravated rape and one count of aggravated sexual battery. The trial court sentenced him to thirty years imprisonment for each aggravated rape and fifteen years for the aggravated sexual battery. The fifteen-year sentence was ordered to run consecutive to the concurrent aggravated rape sentences, resulting in an effective term of imprisonment of forty-five years. His convictions were affirmed by this Court on August 26, 1992, and the Tennessee Supreme Court denied permission to appeal on December 28, 1992.[1] The Petitioner filed a pro se petition for post-conviction relief on January 7, 1993, which was amended with the assistance of counsel on February 15, 1996. In the petition for post-conviction relief, he argues that his due process rights were violated by conviction of an offense for which the statute of limitations had expired and that he was denied effective assistance of counsel at trial.[2] The trial court conducted an evidentiary hearing on April 1 and May 20, 1996. On June 25, 1996, the trial court issued an order denying the petition in part and granting it in part. We affirm the judgment of the trial court.

---

[1] See State v. Eddie Curt Davis, C.C.A. No. 03C01-9109-CR-00295, Hamilton County (Tenn. Crim. App., Knoxville, Aug. 26, 1992), perm. to appeal denied (Tenn. 1992).

[2] The pro se petition also included an issue concerning the use of hearsay testimony at trial. The Petitioner chose not to pursue this issue at the post-conviction hearing. As such, we will not address it in this opinion.

To facilitate our discussion of the issues, we begin with a brief summary of the facts surrounding the offenses. On November 29, 1989, the Petitioner was indicted by presentment on five counts of aggravated rape. The alleged victims were the minor children of his girlfriend, Rebecca Harris.[3] The offenses were alleged to have occurred between September of 1983 and January of 1989. J.M., a young male, was alleged to have been penetrated anally and forced to perform oral sex on the Petitioner. S.M., a young female, was alleged to have been penetrated vaginally, forced to perform oral sex and to have oral sex performed upon her.

The Petitioner's trial was held from November 28 to November 30, 1990. At trial, both victims testified concerning several instances of sexual abuse. The offenses were alleged to have occurred while the children's mother, Rebecca Harris, was at work. Given the young age of the victims, they were not able to identify specific dates on which the abuse had occurred. Instead, they identified the abuse mainly according to which house they were living in at the time of the abuse. At the close of proof, the State elected to proceed on the presentments as charging that the offenses had occurred between September, 1984 and July, 1986 in a house on McCahill Road in Red Bank.

The State also presented expert medical testimony at trial. Dr. David Tepper examined S.M. in August of 1989. At that time, S.M.'s hymen was not intact. The examination of S.M. revealed evidence of repeated penetration of her vagina. Dr. George Winterer examined J.M. in April of 1989. The examination

---

[3] It is the policy of this Court not to identify by name any minor victim of sexual offenses. Therefore, the victims in this case will be referred to as "J.M.," "S.M.," or "the victims."

of J.M. revealed nothing remarkable about his rectum and no evidence of penetration. Dr. Winterer testified, however, that his findings were not surprising given the amount of time which had passed since the alleged penetration.

The State also offered testimony from medical and law enforcement personnel regarding statements made to them by the victims. These statements echoed the victims' testimony at trial concerning the instances of sexual abuse. In addition, the mother of the victims, Rebecca Harris, testified about statements made to her by her children concerning the sexual abuse. Harris also testified that the Petitioner admitted to her that he had had sex with the victims.

Although the Petitioner did not testify at trial, he offered testimony from several witnesses, all of whom were his relatives. These witnesses testified that they never noticed anything unusual about the Petitioner's relationship with the victims. The witnesses also indicated that they, not the Petitioner, babysat the victims while Rebecca Harris was at work.

After considering the proof, the jury acquitted the Petitioner of the charges involving J.M., specifically the allegations that the Petitioner anally raped J.M. and forced J.M. to perform oral sex upon him. The jury found the Petitioner guilty as charged of vaginally raping S.M. and forcing her to perform oral sex upon him. The jury found the Petitioner guilty of the lesser included offense of aggravated sexual battery with regard to the charge that he performed oral sex upon S.M.

On January 7, 1993, the Petitioner filed a pro se petition for post-conviction relief, arguing that his conviction for aggravated sexual battery violated his due

process rights and that defense counsel was ineffective. Counsel was appointed and amended the petition on February 15, 1996. Through the amended petition, the Petitioner argued that his trial attorney, Hank Hill, rendered ineffective assistance of counsel in a number of ways:

> (1) That counsel failed to investigate the case fully and failed to interview all potential defense witnesses;
> (2) that counsel failed to present expert medical evidence to rebut the State's medical proof concerning the physical condition of S.M.;
> (3) that counsel failed to emphasize the inconsistencies in the testimony of the victims;
> (4) that counsel refused to allow him to testify at jury-out hearings; and,
> (5) that counsel failed to raise several viable issues on direct appeal.[4]

The Petitioner also argued that the statute of limitations for aggravated sexual battery had expired prior to his being charged. As such, he contended that his conviction for that offense violated his due process rights.

The trial court conducted an evidentiary hearing on the petition for post-conviction relief on April 1 and May 20, 1996. On May 20, 1996, the State conceded that the Petitioner had been improperly convicted of aggravated sexual battery after the statute of limitations had expired. Accordingly, the trial court granted the post-conviction petition in that regard and vacated the Petitioner's conviction for the aggravated sexual battery of S.M. This ruling is not challenged in this appeal and, therefore, we will not address the statute of limitations issue in this opinion.

---

[4] The Petitioner did not pursue allegations number four and five, that counsel refused to allow him to testify and that counsel failed to raise viable issues on direct appeal, in this appeal from the trial court's order granting his petition in part and denying it in part. Thus, we will not address those allegations in this opinion.

At the post-conviction hearing, the Petitioner testified that defense counsel conducted plea bargaining negotiations and received an offer of thirty years. The Petitioner declined this offer, maintaining that he was innocent. He stated that he wanted to testify at trial, but defense counsel advised against it given that he had a prior criminal record which would have been admitted for impeachment purposes. Had he testified at trial, he would have informed the jury about a bicycle accident which S.M. had that caused her to bleed from her vaginal area. He would also have testified that he walked in on J.M., S.M., and their half-brother while they were in bed together wearing only their underpants. In addition, he would have testified that he heard Rebecca Harris screaming one time that she had caught J.M. and S.M. doing "[s]tuff they don't supposed to be doing that's sister and brother." On cross-examination, the Petitioner admitted that although defense counsel advised against his testifying, the choice as to whether to testify was his to make.

The Petitioner also offered the testimony of several relatives. They testified that defense counsel did not talk with them prior to the day of trial. Missy Strickland, the Petitioner's niece, testified that S.M. had a bicycle accident which caused her to bleed from her vaginal area. Diane Ellenbock and Robin Webster, the Petitioner's siblings, both testified to suggestive behavior between Rebecca Harris and the victims which they deemed inappropriate. Joann Dunning, the Petitioner's mother, echoed the testimony of Ellenbock and Webster. These witnesses and other relatives all testified that they witnessed S.M. masturbating repeatedly. They all also testified that they never witnessed any unusual behavior between the Petitioner and the victims. On cross-examination, Dunning

-6-

and Webster admitted that they had been called as witnesses at the Petitioner's trial.

The Petitioner's defense attorney from trial, Hank Hill, testified at the post-conviction hearing. Hill stated that he began practicing law in 1978 and became an initial member of the public defender's office in Hamilton County when it was established in 1989. Hill recalled speaking with the Petitioner several times prior to trial. Hill stated that either he or his investigator, Alan Miller, interviewed the State's witnesses and every potential witness suggested by the Petitioner. According to Hill, Miller visited the various homes lived in by the Petitioner and the victims over the years alleged in the presentments. Hill spoke with the medical expert who had conducted the examination of S.M., Dr. Tepper, and asked him about the possibility of a bicycle accident causing the tearing of S.M.'s hymen. Dr. Tepper responded that the state of S.M.'s hymen was not consistent with a bicycle injury.

The Petitioner maintained his innocence and Hill, given his investigation of the case, decided to put forward a defense that although S.M. may have been penetrated, it was not the Petitioner who had done so. Hill recalled that there were insinuations of sexual abuse of S.M. by her half-brother who lived in Ohio. Thus, Hill testified that he did not feel a need to attempt to contradict Dr. Tepper's testimony about the condition of S.M.'s hymen through the use of a defense expert.

On cross-examination, Hill freely admitted that he was overburdened with cases during the time that he investigated and tried the Petitioner's case. Hill

testified that his caseload was well in excess of the American Bar Association guidelines. According to Hill, the newly-established public defender's office simply did not have the resources with which to hire enough staff members to maintain reasonable workloads. Hill admitted that the Petitioner would have received more attention from a retained attorney than he received from Hill.

In spite of his excessive caseload, however, Hill testified that the Petitioner received quality representation. Hill did not believe that the outcome of the trial would have been different had he not been overburdened with work. He stated that he spoke with the Petitioner as much as he needed to and fully investigated the case. He testified that he was able to develop enough evidence to put forth the Petitioner's theory at trial, namely that another individual had been responsible for any sexual abuse of the victims.

After considering the evidence presented at the post-conviction hearing, the trial court entered detailed findings of fact and conclusions of law. In short, the trial court did not find the Petitioner's proof to be persuasive and instead accredited Hank Hill's testimony in all respects. With respect to the allegation that defense counsel failed to investigate the case adequately, the trial court found that either Hill or his investigator had interviewed all potential witnesses, that Hill had conducted thorough discovery, and that Hill was prepared for trial. The trial court found further that the defense theory that someone other than the Petitioner was responsible for any sexual abuse of the victims was reasonable and, given that theory, there was no need to present expert medical testimony to contradict the State's medical proof of penetration of S.M. In addition, the trial

court accredited Hill's testimony that the Petitioner was free to testify if he wished to do so.

From the evidence presented at the post-conviction hearing and a review of the trial transcript, the trial court concluded that Hill's representation fell within the range of competence demanded of attorneys in criminal cases. The trial court therefore denied the petition for post-conviction relief on ineffective assistance of counsel grounds. It is from this order of denial that the Petitioner now appeals. On appeal, he contends that the trial court erred in finding that defense counsel adequately investigated the case and presented a competent defense.

In determining whether or not counsel provided effective assistance at trial, the court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975). To succeed on a claim that his counsel was ineffective at trial, a petitioner bears the burden of showing that his counsel made errors so serious that he was not functioning as counsel as guaranteed under the Sixth Amendment and that the deficient representation prejudiced the petitioner resulting in a failure to produce a reliable result. Strickland v. Washington, 466 U.S. 668, 687, reh'g denied, 467 U.S. 1267 (1984); Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). To satisfy this second prong the petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable

probability must be "sufficient to undermine confidence in the outcome." Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When reviewing trial counsel's actions, this court should not use the benefit of hindsight to second-guess trial strategy and criticize counsel's tactics. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Counsel's alleged errors should be judged at the time it was made in light of all facts and circumstances. Strickland, 466 U.S. at 690; see Cooper, 849 S.W.2d at 746.

We note that under the Post-Conviction Procedure Act applicable to the present case, a petitioner bears the burden of proving the allegations in his or her petition by a preponderance of the evidence. See McBee v. State, 655 S.W.2d 191, 195 (Tenn. Crim. App. 1983). Furthermore, the factual findings of the trial court in post-conviction hearings are conclusive on appeal unless the evidence preponderates against them. See State v. Buford, 666 S.W.2d 473, 475 (Tenn. Crim. App. 1983).

Applying the Strickland standard to the case sub judice, we believe that the Petitioner has failed to establish that defense counsel's representation was constitutionally deficient. The Petitioner testified at the post-conviction hearing that defense counsel failed to interview all potential defense witnesses and failed to investigate the case fully. In support of his contentions, the Petitioner offered the testimony of several relatives who stated that they were not interviewed by defense counsel until the day of trial. In contrast, defense counsel testified that either he or his investigator interviewed all witnesses suggested by the Petitioner and that he investigated all relevant aspects of the case.

After hearing all of the evidence and evaluating credibility, the trial court accredited the testimony of the Petitioner's defense counsel, Hank Hill. Thus, the trial court found that the evidence did not support the Petitioner's allegations of ineffective assistance of counsel for failure to investigate. The trial court was in a much better position to evaluate the credibility of the witnesses than this Court. The trial court found Hank Hill's testimony to be persuasive and therefore concluded that the Petitioner had not established that Hill's representation was constitutionally deficient. From the record before us, we cannot conclude that the evidence preponderates against the trial court's findings.

On appeal, the Petitioner also contends that the trial court erred in finding that defense counsel presented a competent defense. With regard to the allegation in the post-conviction petition that defense counsel failed to present medical evidence to rebut the State's medical proof concerning the physical condition of S.M., we conclude that the Petitioner has not carried his burden of establishing that defense counsel's representation was deficient. At trial, the State presented expert testimony that the condition of S.M.'s hymen indicated that she had been repeatedly penetrated. Defense counsel testified that he did not challenge this testimony because the defense theory was not that S.M. had not been penetrated, but rather that the Petitioner had not penetrated her. Moreover, the Petitioner's complaint that proof of a bicycle accident causing an injury to S.M.'s vaginal area was not brought forth at trial is unfounded. Our reading of the trial transcript indicates that this issue was raised during the testimony of Dr. David Tepper.

The Petitioner also alleged that defense counsel presented an incompetent defense in that he failed to emphasize the inconsistencies in the testimony of the victims and their mother. The trial record, however, is replete with examples of cross-examination by defense counsel focusing on inconsistencies in their testimony. For example, defense counsel repeatedly questioned S.M. about the number of instances of sexual abuse, often resulting in conflicting answers. Furthermore, defense counsel effectively emphasized the fact that the mother of the victims, Rebecca Harris, gave conflicting answers as to when and how she initially discovered the sexual abuse. We therefore conclude that the Petitioner has failed to carry his burden of demonstrating that defense counsel's representation was constitutionally deficient with regard to the presentation of a competent defense.

We note that on appeal, the Petitioner raises an issue not presented in his petition for post-conviction relief. He contends that the trial court at the post-conviction hearing improperly restricted his examination of witnesses and presentation of evidence. In particular, he complains that the trial court restricted his cross-examination of Hank Hill with regard to Hill's questioning of the State's witnesses about inconsistencies in their testimony. Moreover, he complains that the trial court restricted his own testimony about what he would have testified to at trial had he chosen to testify. Furthermore, he complains that the trial judge improperly interjected himself in the post-conviction hearing by questioning the Petitioner's witnesses.

It is well-established that rulings on the admissibility of evidence and the propriety and form of examination of witnesses are entrusted to the sound

discretion of the trial court. See, e.g., State v. Hutchison, 898 S.W.2d 161, 172 (Tenn. 1994), cert. denied, 116 S.Ct. 137, 133 L.Ed.2d 84 (1995); State v. Harris, 839 S.W.2d 54, 72 (Tenn. 1992), cert. denied, 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993). Such rulings will not be reversed on appeal absent an abuse of that discretion. See State v. Caughron, 855 S.W.2d 526, 541 (Tenn. 1993), cert. denied, 510 U.S. 579, 114 S.Ct. 475, 126 L.Ed.2d 426 (1993).

The record from the post-conviction hearing reveals that at one point when the Petitioner was cross-examining Hank Hill about whether he had emphasized to the jury certain inconsistencies in Rebecca Harris' statements, the trial court, in response to an objection by the assistant district attorney general, commented as follows:

> Well, I just -- I don't -- I'm not going to let you go into this entire case and ask him [Hank Hill] about everything that you might have done differently or you think that he should have done. You know, we'll be here for the rest of six months if you go through this entire case and say, well, when you asked this question, shouldn't you have asked a different question, or did you look at this, and go through every finite detail of this case.
>
> The question is whether or not -- and Mr. Hill has amply stated several times that he did everything he felt he could do to represent this client and thought he got a fair trial, and he felt like even if he had had more time and more assistance, it wouldn't have made any difference, and whether -- the test as to whether or not he was effectively representing him is not whether he would have done everything the way some other lawyer might have done it, but was whether or not he rendered assistance that was within the range of competence demanded by attorneys in criminal cases at this particular time, and that's the issue before the Court.

The Petitioner agreed with the trial court's statements and then continued cross-examination of Hank Hill by asking him about inconsistencies in Dr. Tepper's testimony at trial.

From these circumstances, we cannot conclude that the trial judge abused his discretion in controlling the examination of Hank Hill. The Petitioner was allowed to raise as an issue that Hill was ineffective for failing to emphasize the inconsistencies in Rebecca Harris' testimony. With this issue in mind, the trial court reviewed the trial transcripts containing Harris' testimony prior to ruling on the post-conviction petition. Thus, it appears that the Petitioner was, in fact, permitted to raise the issue and that the trial court possessed and reviewed the evidence necessary to rule upon the issue.

With regard to the complaint that the trial court improperly restricted the Petitioner's own testimony about what he would have testified to at trial had he chosen to testify, we conclude that the issue provides no basis for relief for the Petitioner. At the post-conviction hearing, the Petitioner testified that he heard Rebecca Harris screaming that she had caught S.M. and J.M. doing "[s]tuff they don't supposed to be doing that's sister and brother." At that point, the trial court cut off the Petitioner's testimony, noting that he was testifying to hearsay evidence which would not have been admitted at trial. On appeal, the Petitioner challenges the trial court's restriction of his testimony, arguing that the hearsay evidence would have been admissible pursuant to the excited utterance exception. See Tenn. R. Evid. 803(2).

Regardless of the propriety of the trial court's restriction of the Petitioner's testimony at the post-conviction hearing, we do not believe that this issue provides relief for the Petitioner. The testimony at issue in the post-conviction hearing related to what the Petitioner would have testified to had he chosen to testify at trial. The Petitioner initially claimed in his post-conviction petition that

defense counsel pressured him not to testify. On cross-examination at the post-conviction hearing, however, the Petitioner admitted that defense counsel merely advised him not to testify because of his prior record and that the decision as to whether to testify was his to make. The Petitioner chose not to testify at trial. Thus, the substance of what he would have testified to at trial had he chosen differently does not support his claim of ineffective assistance of counsel.

With regard to the complaint that the trial judge improperly interjected himself in the post-conviction hearing by questioning the Petitioner's witnesses, we conclude that the trial court did not err. The Petitioner challenges the fact that the trial judge asked additional questions of some of the Petitioner's witnesses at the post-conviction hearing. The Petitioner's argument ignores the principle that the trial court has discretion to interrogate witnesses. <u>See</u> Tenn. R. Evid. 614(b). Our review of the record indicates that the trial court's questions were relevant and did not exhibit an unfair bias. Thus, we conclude that the trial judge did not abuse his discretion by posing limited questions to some of the Petitioner's witnesses at the post-conviction hearing.

For the reasons set forth in the discussion above, we conclude that the Petitioner has failed to demonstrate that the trial court erred in denying the petition for post-conviction relief on ineffective assistance of counsel grounds. We therefore affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE

CONCUR:

-16-

_____
GARY R. WADE, JUDGE


_____
JERRY L. SMITH, JUDGE