IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

OCTOBER 1998 SESSION

FILED

December 18, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| CHAUNCEY R. GORDON, | ) | |
| | ) | No. 01C01-9710-CC-00483 |
| Appellant, | ) | |
| | ) | Giles County |
| v. | ) | |
| | ) | Hon. Robert L. Jones, Judge |
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee. | ) | (Post-Conviction) |

For the Appellant:

Joseph W. Henry, Jr.
119 South First Street
Pulaski, TN  38478-0458

For the Appellee:

John Knox Walkup
Attorney General and Reporter
        and
Karen M. Yacuzzo
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN  37243-0493

T. Michael Bottoms
District Attorney General
        and
Richard H. Dunavant
Assistant District Attorney
General
Giles County Courthouse
P.O. Box 304
Pulaski, TN  38478-0304

OPINION FILED: _____

AFFIRMED

Joseph M. Tipton
Judge

**O P I N I O N**

The petitioner appeals the denial of his petition for post-conviction relief. On January 2, 1991, the petitioner pled guilty to one count of first degree murder and one count of second degree murder. He received an agreed sentence of life plus twenty-five years, respectively. The petitioner now attacks the validity of that guilty plea, arguing that the plea was not voluntarily, knowingly, and understandingly made. Upon a complete review of the record, we conclude that the evidence does not preponderate against the trial court's findings. Thus, we affirm the dismissal of the petition.

**FACTS**

In October 1989, the petitioner shot and killed his girlfriend and her mother. A Giles County Grand Jury indicted him on two counts of first degree murder. The district attorney's office sought the death penalty. Through extensive negotiations, the petitioner's appointed counsel secured a plea agreement that allowed the petitioner to plead guilty to one count of first degree murder and one count of second degree murder. The petitioner received a life sentence and twenty-five years, respectively, to run consecutively.

**A.  Guilty Plea Hearing**

At the guilty plea hearing, the trial court addressed numerous questions to the petitioner to ascertain whether he understood the nature of the proceedings and the waiver of his rights. The petitioner indicated that he did understand and that the plea was voluntary. He also expressed satisfaction with his counsel's representation.

When the petitioner denied remembering the details of the crime itself due to intoxication, the trial court inquired further into the circumstances surrounding the plea. The trial court's inquiry revealed that counsel had discussed and investigated the

2

possibility of an intoxication defense for the petitioner. Counsel's investigation showed that the witnesses' testimony would controvert such a defense, not support it.

The trial court then confirmed that counsel had explained these things to the petitioner and that he still wished to enter the plea. The petitioner indicated that he did want to enter the plea. Thus, the trial court approved the agreement and the plea was entered.

## B. Post-Conviction Hearing

At the post-conviction hearing, the trial court heard testimony from the petitioner's appointed counsel at the trial level and the petitioner himself. The trial court also received the deposition testimony of Rudy Rains, the petitioner's Adult Basic Education teacher, and Dr. Edward Bloser, a prison psychologist. The trial court filed a written order of denial that included specific findings relating to each of the petitioner's averments.

## 1. Trial Counsel

The petitioner's trial attorney acknowledged little independent recollection of his discussions with the petitioner leading up to the plea.[1] However, his testimony indicated appropriate preparation for a case of this magnitude.

There were extensive negotiations with the district attorney's office in reaching the plea agreement. He recalled several meetings with the petitioner, the petitioner's father, and other people associated with the petitioner's family. He also remembered discussions with the petitioner about the death penalty aggravators, their possible applicability, and the ramifications of proceeding to trial versus accepting a plea agreement.

---

[1] Testimony revealed that the attorney's original case file had been lost, and most likely destroyed, due to the collapse of an office building in which he was practicing.

3

The attorney recalled investigating the possibility of an intoxication defense. The investigation revealed that the witnesses, including two Tennessee Highway Patrol Officers and an eyewitness to one of the shootings, did not see anything to indicate that the petitioner was significantly impaired.

The attorney testified that he felt the petitioner understood the guilty plea proceedings. He said that if he had any reservations about the petitioner's ability to understand, he would have asked the trial court to be more specific, go into more detail, and use non-legal terminology.

## 2. Rudy Rains

Rudy Rains, the petitioner's Adult Basic Education teacher, testified by deposition regarding the petitioner's current academic abilities and intellectual capabilities in a classroom setting. Mr. Rains characterized the petitioner as "pretty smart" with "lots of common sense" compared to other inmates. It was his opinion that the petitioner suffered from a learning disability in reading and reading comprehension. However, Mr. Rains believed that if someone read the plea document to the petitioner, he could understand it.

## 3. Dr. Edward Bloser

Dr. Bloser, a psychologist at the prison, testified by deposition that his department evaluated the petitioner at the request of the educational staff. He said that the type of evaluation requested is performed in cases of suspected limited intellectual capacity. The results showed a below third-grade spelling ability, a sixth-grade math ability, and overall comprehension and reading skills at a fourth-grade level. The petitioner had a full-scale IQ score of fifty-eight. This placed him in the mildly mentally retarded range. However, Dr. Bloser expressed deep reservations about relying on IQ tests and characterized them as very inaccurate.

Although the IQ test result placed the petitioner at a level of mild mental retardation and his comprehension level tested fairly low, Dr. Bloser did not believe that the petitioner was mildly mentally retarded. He said that the petitioner's IQ was higher than the average inmate, and his ability to comprehend was at least the same as the average inmate.

### 4. Chauncey Gordon

The petitioner testified that he did not understand that he was originally charged with two counts of first degree murder and did not understand what he was doing when he pled guilty. He testified that his attorney knew he could not read and that the attorney read the documents to him. He said that although he did not understand the attorney's explanations of the documents, he signed them anyway.

The petitioner testified that he did not understand most of what the judge said to him at the plea hearing. He said that he did not understand the judge's explanation of the intoxication defense. He said that he agreed with everything that was said to him because "[i]t's embarrassing to sit in front of a lot of people and to say . . . 'I can't read' or . . . 'I don't understand this.'"

The petitioner acknowledged that he answered the questions at the guilty plea hearing without being prompted by his attorney. He conceded that he received advice from a fellow inmate who convinced him that if he had gone to trial, he might not have been convicted of first degree murder.

### 5. Post-Conviction Order of Denial

The trial court found the petition to be without merit. Specifically, it found that the petitioner's responses at the guilty plea hearing and the entire record indicate that the petitioner "understood the nature of the charges against him and all of his rights at the time the plea was entered." The trial court noted that the petitioner's testimony at the post-conviction hearing was self-serving and not credible compared to his

5

statements at the guilty plea hearing. The trial court noted that neither Mr. Rains nor Dr. Bloser would characterize the petitioner as mildly mentally retarded. The trial court further noted that according to their testimony, the petitioner could understand what someone else read to him and would have understood questions asked by the court. The trial court concluded that the guilty plea was knowingly and voluntarily entered.

## STANDARD OF REVIEW

The trial court's findings of fact on post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise. Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990); Adkins v. State, 911 S.W.2d 334, 341 (Tenn. Crim. App. 1995). The burden of establishing that the evidence preponderates otherwise is on the petitioner. Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). This court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the trial court. Henley v. State, 960 S.W.2d at 579; Massey v. State, 929 S.W.2d 399, 403 (Tenn. Crim. App. 1996); Black v. State, 794 S.W.2d at 755. Questions concerning the credibility of witnesses and the weight and value to be given to their testimony are resolved by the trial court, not this court. Henley, 960 S.W.2d at 579; Black, 794 S.W.2d at 755.

## CONCLUSION

This court has examined the entire record of this case including the transcript of the guilty plea hearing, the post-conviction hearing transcript, and the trial court's order of denial. The evidence does not preponderate against the findings made by the trial court in its thorough order of denial.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

6

_____
Joseph M. Tipton, Judge


CONCUR:


_____
Joe G. Riley, Judge



_____
James Curwood Witt, Jr., Judge