**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

FILED

January 6, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

**AT KNOXVILLE**

**SEPTEMBER 1999 SESSION**

| | | |
|---|---|---|
| **ROBERT WILLIAMS,** | ) | |
| | ) | |
| Appellant, | ) | C.C.A. No. 03C01-9302-CR-00050 |
| | ) | E1999-00323-CCA-R3-CD |
| vs. | ) | Hamilton County |
| | ) | |
| **STATE OF TENNESSEE,** | ) | Hon. Douglas A. Meyer, Judge |
| | ) | |
| Appellee. | ) | (Post-Conviction) |
| | ) | |

**FOR THE APPELLANT:**
**JOHNNY L. WOODRUFF**
Attorney at Law
701 Market St., Ste. 1300
Chattanooga, TN 37402

**FOR THE APPELLEE:**
**PAUL G. SUMMERS**
Attorney General & Reporter

**ELLEN H. POLLACK**
Asst. Attorney General
425 Fifth Ave. North
2d Floor, Cordell Hull Bldg.
Nashville, TN 37243-0493

**WILLIAM H. COX, III**
District Attorney General

**BATES W. BRYAN**
Asst. District Attorney General
600 Market St., Ste. 300
Chattanooga, TN 37402

OPINION FILED:_____

**AFFIRMED**

**JAMES CURWOOD WITT, JR., JUDGE**

## OPINION

The defendant, Robert Williams, is before the court on appeal of the trial court's denial of his petition for post-conviction relief. Williams is serving a sentence of life plus 30 years for the first degree murder of a former paramour and the attempted second degree murder of her husband.[1] See State v. Robert Williams, No. 03C01-9302-CR-00050 (Tenn. Crim. App., Knoxville, Apr. 2, 1996). In his original and amended post-conviction petitions, the petitioner raised numerous allegations; however, on appeal he raises only three claims of ineffective assistance of counsel.

1.   Whether counsel was ineffective by not offering evidence of the petitioner's diminished capacity and intoxication at the time of the crimes.

2.   Whether counsel was ineffective for eliciting evidence from the murder victim's husband about the petitioner's previous assault of the murder victim.

3.   Whether counsel was ineffective for failing to object to a portion of the state's closing argument.

Upon review of the record, the briefs of the parties, and the applicable law, we hold that the trial court correctly determined that the petitioner failed to prove his claims. Accordingly, we affirm the judgment of the trial court.

The Sixth Amendment of the United States Constitution and Article I, section 9 of the Tennessee Constitution both require that a defendant in a criminal case receive effective assistance of counsel. Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975). When a defendant claims ineffective assistance of counsel, the standard applied by the courts of Tennessee is "whether the advice given or the service rendered by the attorney is within the range of competence demanded by

---

[1]Williams originally received a death sentence for the first degree murder conviction. On appeal, this court remanded for a new sentencing hearing. State v. Robert Williams, No. 03C01-9302-CR-00050 (Tenn. Crim. App., Knoxville, May 17, 1996) (order on petition for rehearing). On remand, the state conceded that no aggravating factors applied and that a life sentence should be imposed. Accordingly, the trial court resentenced the defendant to life for the first degree murder conviction.

attorneys in criminal cases." Summerlin v. State, 607 S.W.2d 495, 496 (Tenn. Crim. App. 1980).

In Strickland v. Washington, the United States Supreme Court defined the Sixth Amendment right to effective assistance of counsel. 466 U.S. 668, 104 S. Ct. 2052 (1984). First, the appellant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and must demonstrate that counsel made errors so serious that he was not functioning as "counsel" guaranteed by the Constitution. Id. at 687, 104 S. Ct. at 2064. Second, the petitioner must show that counsel's performance prejudiced him and that errors were so serious as to deprive the defendant of a fair trial, calling into question the reliability of the outcome. Id. at 687, 104 S. Ct. at 2064.

The petitioner's burden of proof in all post-conviction cases filed after May 10, 1995 is by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). The court must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance and must evaluate counsel's performance from counsel's perspective at the time of the alleged error and in light of the totality of the evidence. Strickland, 466 U.S. at 690, 695, 104 S. Ct. at 2066, 2069. The petitioner must demonstrate that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. Id. at 695, 104 S. Ct. at 2069. A trial court's findings of fact following a post-conviction hearing have the weight of a jury verdict. Bratton v. State, 477 S.W.2d 754, 756 (Tenn. Crim. App. 1971). On appeal, those findings are conclusive unless the evidence preponderates against the judgment. Butler v. State, 789 S.W.2d 898, 900 (Tenn. 1990).

With these principles in mind, we turn to the allegations of the case

**3**

at bar.

## I

First, the petitioner claims that counsel was ineffective for failing to offer evidence of his diminished capacity and intoxication at the time of the crimes. At the post-conviction hearing, there was evidence that an expert hired by the defense prior to trial had opined that the petitioner suffered from diminished capacity, caused in part by "[p]robable brain damage resulting from decades of alcohol abuse." However, there was also proof at the post-conviction hearing that another expert who examined the petitioner prior to trial found no evidence of diminished capacity. The petitioner was represented by two attorneys at trial. Both of his trial attorneys testified at the hearing. Counsel pointed out that the petitioner's trial was approximately two years before the court of criminal appeals' decision in State v. Phipps, 883 S.W.2d 138 (Tenn. Crim. App. 1994), which clarified the law regarding whether evidence of a defendant's diminished capacity could be considered to negate the element of specific intent. The petitioner's trial attorneys did not call the expert who would testify about the petitioner's diminished capacity at the guilt phase of the trial because the expert had evidence about the petitioner's criminal background. The murder victim was the third woman with whom the petitioner had been involved and then charged with killing. Counsel felt if the jury heard this evidence, a finding of guilt would be imminent. Additionally, counsel determined that offering evidence of the petitioner's intoxication at the time of the crimes was not a viable option because the petitioner's actions on the day of the crimes did not indicate the petitioner was intoxicated so as to negate the *mens rea* of the crimes.[2] Counsel further testified that after consultation with the

---

[2]Specifically, counsel testified that the petitioner had a family member take him to the victims' home without telling the family member the purpose of the trip; he concealed a weapon; he had the family member drive down a couple of blocks from the victims' house and then come back; he went inside, shot the

4

petitioner, the expert was not called during the penalty phase of the trial because counsel believed the state had failed to carry its burden of proving the prior violent felony aggravator by not introducing certified copies of the petitioner's prior convictions. Counsel determined that allowing the expert or the defendant's family members to testify during the penalty phase would allow the state to cross-examine these witnesses about the petitioner's prior criminal record, thereby allowing the state to establish the required proof of the death penalty aggravator.

The trial court found that the failure to call the expert witness was a matter of trial strategy; thus, the petitioner failed to carry his burden of proving his claims by clear and convincing evidence. On appellate review, we agree that the choices made by trial counsel were informed decisions of trial strategy. The petitioner's trial was prior to the Phipps decision; the state of the law with regard to admissibility of expert testimony regarding diminished capacity was in a confusing state of evolution prior to Phipps. See Phipps, 883 S.W.2d at 146-49. More significantly, had counsel attempted to present the evidence of diminished capacity and intoxication, the result would likely have been disastrous for the petitioner. If introduced during the trial phase, the expert's testimony would have been subject to rebuttal by the other expert who had examined the petitioner. The jury would likely have learned that the murder victim was the third girlfriend the petitioner had been charged with killing. The evidence of intoxication would likely have been rejected as inconsistent with the petitioner's actions on the day of the crime. If introduced during the penalty phase, the evidence would have allowed the state the opportunity to cure the deficiencies of its proof of the prior violent felony aggravator. In the petitioner's direct appeal, this court reversed the death penalty imposed for the first degree murder conviction, finding insufficient proof of this aggravator. Had

victims, then concealed the weapon, got into the vehicle that was waiting and left the scene.

5

the expert evidence been offered during the penalty phase of the trial, the direct appeal would likely have been decided adversely to the petitioner.[3]

For these reasons, we hold that the evidence does not preponderate against the trial court's finding that the petitioner failed to carry his burden of proof.

**II**

In his next allegation of ineffective assistance of counsel, the petitioner complains about testimony elicited from the murder victim's husband on cross-examination. The husband, who is also the victim of the attempted second degree murder, was present when the murder victim was killed. The specific evidence in question relates to the fact that the petitioner had previously assaulted the murder victim.

In attempting to establish self-defense, counsel cross-examined the murder victim's husband about the murder victim owning a gun. Counsel was attempting to show that the petitioner knew the murder victim was armed. When the murder victim's husband denied that the petitioner would know that the murder victim had a gun, counsel inquired when the murder victim obtained the gun. The murder victim's husband responded, "Like several weeks after all the stabbing, all the stabbing that he had did [sic] to her," referring to a previous assault by the petitioner on the murder victim. Counsel testified that he objected to the answer as unresponsive.

---

[3]Furthermore, we fail to see how the petitioner could be aggrieved of counsel's decision not to offer the expert evidence during the penalty phase. Although the petitioner initially received a death sentence, ultimately he was sentenced to life for the murder conviction. There is no lesser sentence he could have received for first degree murder.

6

The trial court found that this did not amount to ineffective assistance. We agree. Counsel had a difficult task in attempting to discredit this state's witness and establishing a claim of self-defense without presenting the petitioner's testimony, which surely would have been disastrous in light of his prior criminal record. Counsel's decision to inquire about the murder victim's firearm was based upon an informed, strategic decision that we will not second-guess. Counsel was attempting to establish when the murder victim obtained a gun, and counsel cannot be faulted for not having the clairvoyance to anticipate the witness' unusual answer.

### III

Finally, we consider whether counsel was ineffective for failing to object to a portion of the state's closing argument in which the prosecutor made references to the community. There are two such references in the state's rebuttal argument during the guilt phase. The first time, the prosecutor said, "We are here because as a community we do not want men like [the defendant] killing other human beings, and getting away with it." The defense did not object. The second time, the prosecutor said, "I'm proud to ask you for this community to find this man –," at which point the defense interposed an objection that the trial court sustained.

At the post-conviction hearing, counsel could not recall the reason for not objecting to the first statement. However, counsel testified, "I think probably the first time I was hoping it would slip by and wasn't that onerous, and I don't think the jury put as much import on it." The record supports that counsel was trying to minimize the attention drawn to the statements of this nature. When the objection was sustained to the second statement, the trial court offered a curative instruction, but the defense declined it, preferring, to "[j]ust let it go."

7

In dismissing the post-conviction petition, the court below found that counsel had given a proper explanation for the failure to object. The court observed that counsel must chose objections wisely because "[t]oo many objections may turn a jury 'off.'" On review, the evidence does not preponderate to the contrary. The record of trial reflects that the defense questioned why the state would prosecute an old man with only a few years of life left "or even have the audacity" to seek the death penalty. The state's first reference to the community was, in essence, a response to the defense's argument about why the prosecution was taking place. We question whether this argument was improper. See, e.g., State v. Pulliam, 950 S.W.2d 360, 368 (Tenn. Crim. App. 1996) ("Arguments concerning deterrence and appeals to the jury to act as the community conscience are not necessarily impermissible."). Even if the argument was improper, our review of the entire closing arguments of the parties at the guilt phase of the trial leads us to conclude that counsel was not ineffective for failing to object to this comment. Any attempt to minimize this portion of the argument, rather than to call attention to it through objection, was a prudent course.

In conclusion, the petitioner has failed to carry his appellate burden of demonstrating that the evidence preponderates against the trial court's determinations. As such, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE


CONCUR:

**8**

_____
GARY R. WADE, PRESIDING JUDGE


_____
JERRY L. SMITH, JUDGE