# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### AUGUST SESSION, 1997

FILED

December 2, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **KENNETH LEE CLAY,** | ) | **C.C.A. NO. 02C01-9610-CC-00323** |
| | ) | |
| Appellant, | ) | |
| | ) | **LAKE COUNTY** |
| | ) | |
| **V.** | ) | |
| | ) | **HON. JOE G. RILEY, JR., JUDGE** |
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee. | ) | **(POST-CONVICTION)** |

FOR THE APPELLANT:

**LANCE E. WEBB**
P.O. Box 26
Union City, TN 38261

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**CLINTON J. MORGAN**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN 37243

**C. PHILLIP BIVENS**
District Attorney General

**JOHNNY VAUGHN**
Assistant District Attorney General
115 East Market
P.O. Box E
Dyersburg, TN 38025

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# **OPINION**

Petitioner, Kenneth Lee Clay, appeals the trial court's denial of his petition for post-conviction relief. On July 20, 1994, Petitioner was convicted of two counts each of burglary and theft of property following a jury trial in the Circuit Court of Lake County. He was sentenced to four (4) years for each count, with counts one (1) and two (2) to be served concurrently and counts three (3) and four (4) to be served concurrently. Counts one (1) and two (2) were to be served consecutive to the sentences imposed in counts three (3) and four (4), for a total sentence of eight (8) years. Petitioner contends that he was denied his Sixth Amendment right to the effective assistance of counsel because of Counsel's: (1) failure to present an alibi defense; (2) failure to exercise peremptory challenges during voir dire of the jury; (3) deprivation of Petitioner's right to testify; and (4) failure to appeal the issue of consecutive sentencing. We affirm the judgment of the trial court.

In determining whether counsel provided effective assistance at trial, the court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To succeed on a claim that his counsel was ineffective at trial, a petitioner bears the burden of showing that his counsel made errors so serious that he was not functioning as counsel as guaranteed under the Sixth Amendment and that the deficient representation prejudiced the petitioner resulting in a failure to produce a reliable result. Strickland v. Washington, 466 U.S. 668, 687, reh'g denied, 467 U.S. 1267 (1984); Cooper v. State, 849 S.W.2d

744, 747 (Tenn. 1993); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). To satisfy the second prong the petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When reviewing trial counsel's actions, this court should not use the benefit of hindsight to second-guess trial strategy and criticize counsel's tactics. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Counsel's alleged errors should be judged at the time they were made in light of all facts and circumstances. Strickland, 466 U.S. at 690; see Cooper, 849 S.W.2d at 746.

The Petitioner called trial counsel to testify at the evidentiary hearing. Counsel was appointed to represent Petitioner for charges of burglary and theft arising out of two separate incidents. One of the burglaries was committed on January 6, 1994, and the second burglary occurred on February 20, 1994. Both of the theft charges were felonies because the amount stolen was over five hundred dollars ($500.00). The first jury trial on these charges against Petitioner ended in a mistrial, but he was convicted of all charges at the second trial.

Counsel stated that he initially met with Petitioner briefly on the day he was appointed, and that he and his investigator met with the Petitioner on later dates. During those meetings, they discussed Petitioner's defense and any alibi witnesses he named. A plea offer was made to Petitioner, and both the investigator and counsel talked to Petitioner regarding the terms and

ramifications of the offer. The offer made by the District Attorney's office was four (4) years for each charge, all sentences to run concurrently but consecutive to all prior sentences. Counsel did not recall any other offers being made to Petitioner. Trial counsel obtained copies of statements given to the police regarding the burglaries. From the time counsel was appointed to the time of trial, he and his investigator met with the Petitioner several times.

The alibi witnesses Petitioner named were subpoenaed for the first trial, and counsel spoke with each of them. All three of the witnesses could not be of any help to Petitioner because of the time frame in which the burglary occurred. While all of them had been with the Petitioner earlier in the evening on the night of the burglary, they did not know anything of his whereabouts from that time until the next day. Counsel decided that the witnesses would not help Petitioner's defense, but would hurt him and did not call them to testify. Because of this, these witnesses were not subpoenaed for the second trial. Counsel discussed with Petitioner his right to testify at both trials, but recommended that he not testify due to his prior record. The final decision was left to the Petitioner, and he chose not to testify on both occasions.

Counsel stated that jury selection was very important in both trials, and that he exercised three of his peremptory challenges at the second trial. While one of the members of the jury which convicted Petitioner had previously worked at the store that was robbed, counsel personally knew the juror and "didn't feel like that would have mattered to her." While counsel could not specifically recall if he asked the juror if she could be unbiased, the Petitioner did not object to her being a juror. When questioned regarding his cross-examination of the Petitioner's live-

in girlfriend, whose testimony at the second trial contradicted her testimony from the first trial, counsel stated that he cross-examined her and "tried at some point to get her on line with the second burglary . . . because she had to me conveyed a wrong statement to the jury. I can't remember exactly what it was but I thought she had corrected it, but I doubt if the jury . . . knew what was happening."

Lloyd Price, a purported alibi witness for the Petitioner, testified that he was subpoenaed to the first trial, but he did not remember talking to Petitioner's counsel. Price could not recall being with Petitioner on January 6, 1994. He stated that he had been drinking that night.

Petitioner testified that he could not recall meeting with his trial counsel, but he did meet with the investigator. He gave the investigator the names of potential alibi witnesses for the first burglary of January 6, 1994. At another meeting, the investigator discussed the implications of the plea agreement offer with him, but he did not understand what he would have been pleading guilty to as counsel did not explain it to him. Petitioner later discussed another plea agreement offer with the investigator in which he was offered a 1.5 year sentence for a guilty plea, but it was not properly explained to him.

At the evidentiary hearing, Petitioner recalled that his alibi witnesses were subpoenaed for the first trial, but that counsel would not call them to testify because counsel said, "[T]hey'll hurt you more than they can help you." Petitioner did not ask counsel to subpoena these witnesses for the second trial. Petitioner stated that while he did not fully understand the plea agreement offers, he would not have pled guilty regardless what the offer would have been. While

Petitioner claimed he wanted to testify at trial, he was advised that his criminal record would be brought up and felt pressured not to testify.

Petitioner recalled the juror who had worked at Piggly Wiggly, the site of the burglary. He stated that he mentioned this fact to trial counsel, but counsel replied that she would be a good juror. Petitioner never specifically requested counsel to strike the woman from the jury panel. Following the conviction in the second trial, Petitioner testified that trial counsel never consulted with him regarding any possible issues for appeal, nor did he specifically suggest any issues for appeal.

Upon review of the record, including Petitioner's presentence report and transcript from his second trial, this court finds that the Petitioner was not denied the effective assistance of counsel. In a written memorandum, the trial judge found that the Petitioner had failed to establish that he was deprived of effective assistance of counsel. We conclude that the evidence does not preponderate against these findings of the trial court.

In his brief, Petitioner also refers to counsel's failure to adequately prepare for trial. From the testimony of trial counsel, his preparation was sufficient to provide Petitioner with effective representation. As the judge correctly pointed out in his order denying the petition, there has been no showing that counsel could have done anything else in trial preparation. On the issue of counsel's failure to call alibi witnesses, counsel interviewed and subpoenaed all witnesses which Petitioner identified. Furthermore, the alibi witness which Petitioner called to testify at the post-conviction hearing could not recall seeing Petitioner at all on

the night in question and had been drinking that night. On the issue of alibi witnesses, a petitioner is not entitled to any relief "unless he can produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called." Black v. State, 794 S.W.2d 752, 758 (Tenn. Crim. App. 1990). Petitioner has clearly not met that requirement.

Petitioner also contended the cross-examination of one of the State's witnesses, his live-in girlfriend, was an example of ineffective assistance of counsel. While Petitioner claims that her testimony at the second trial was inconsistent with that of the first trial, Petitioner failed to provide this court a transcript of the girlfriend's testimony from the first trial. While it does appear from counsel's cross-examination during the second trial that there were some contradictions in the girlfriend's testimony, counsel did attempt to impeach her in this regard and to clarify the testimony at the second trial. Petitioner has failed to show any prejudice.

Petitioner's contentions regarding the failure to exercise peremptory challenges also are without merit. Petitioner and counsel specifically discussed the potential juror's prior employment at the store that was burglarized, and counsel told Petitioner that he believed she would be a good juror. Counsel's decision was based upon his personal knowledge and was made as a tactical decision. This court should not second-guess trial counsel's tactical and strategic choices unless those choices were uninformed because of inadequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In any event, Petitioner did not specifically request that this juror be challenged.

-7-

On the issue of his failure to testify, Petitioner contends that counsel improperly insisted that he not testify. There were two separate trials in this matter, and on both occasions Petitioner was advised of his right to testify and the fact that his prior criminal record would probably be brought up by the State for impeachment purposes. On both occasions, Petitioner made the final decision not to testify, and counsel's advice that Petitioner not testify was a tactical choice. While a different strategy might have been employed by counsel in this regard, counsel may not be deemed to be ineffective for this reason alone. See Williams v. State, 599 S.W.2d 276, 280 (Tenn. Crim. App. 1980).

The final claim of Petitioner is that counsel failed to raise the issue of consecutive sentencing in his direct appeal. There was little testimony elicited from counsel on this matter at the post-conviction hearing, but it is clear from the record that consecutive sentences are justified in Petitioner's case. At the sentencing hearing, Petitioner was found to be (1) a professional criminal who knowingly devoted himself to criminal acts as a major source of livelihood, and (2) an offender whose record of criminal activity was extensive. Tenn. Code Ann. § 40-35-115(b)(1) and (2). In addition, Petitioner's pre-sentence report indicated that he has a nearly non-existent record of employment since his eighteenth birthday. As trial counsel felt Petitioner met the criteria for consecutive sentencing, counsel did not raise it as an issue on appeal. There is no requirement that counsel raise a non-frivolous issue on appeal if, as a matter of professional judgment, counsel feels the issue should not be addressed. See Porterfield v. State, 897 S.W.2d 672, 678-79 (Tenn. 1995) cert. denied, 116 S.Ct. 385 (1995); State v. Draper, 800 S.W.2d 489, 498 (Tenn. Crim. App. 1990).

A thorough review of the record reflects that the trial court properly denied Petitioner's post-conviction petition. We affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge

CONCUR:

_____
DAVID G. HAYES, Judge

_____
JERRY L. SMITH, Judge