# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### DECEMBER 1999 SESSION

FILED

March 6, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **CARLOUS COMAN,** | * | No. W1999-01074-CCA-R3-PC |
| Appellant, | * | MADISON COUNTY |
| VS. | * | Roy B. Morgan, Jr., Judge |
| **STATE OF TENNESSEE,** | * | (Post-Conviction Relief) |
| Appellee. | * | |

FOR THE APPELLANT:

MIKE MOSIER
P. O. Box 1623
204 West Baltimore
Jackson, TN 38302-1623

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General & Reporter

R. STEPHEN JOBE
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

JAMES G. (Jerry) WOODALL
District Attorney General

ALFRED LYNN EARLS
Assistant District Attorney
P. O. Box 2825
Jackson, TN 38302

OPINION FILED: _____

**AFFIRMED**

**JOHN EVERETT WILLIAMS,**
Judge

# OPINION

## INTRODUCTION

The petitioner, Carlous Coman, appeals from the Madison County Circuit Court's order denying his petition for post-conviction relief. On April 19, 1997, the petitioner was convicted by a Madison County jury of second degree murder. For this offense, the defendant, a Range I offender, was sentenced to twenty years in the Department of Correction. On February 17, 1999, he filed a post-conviction petition alleging ineffective assistance of counsel at trial and upon appeal. The trial court denied this petition after a hearing. After careful review, we AFFIRM the order of the trial court denying the petition.

## FACTS

The facts surrounding the commission of this offense were summarized by this Court on direct appeal as follows:

> On the evening of March 29, 1995, the defendant and three companions went to the apartment of Jacqueline Haynes. The defendant knocked on the door. When Haynes answered the door, the defendant, who appeared angry, asked her if she had seen Brent Love. She told the defendant she had not seen Love that evening. The defendant and his companions left. They then went to the apartment of Terry Kay Wallace.
>
> Roderick Purdy, one of the defendant's companions, and a co-defendant, went to the door and knocked. When Andrew Thompson answered the door, Purdy asked if Love was there. According to a statement given to police, Love had removed the hubcaps from Purdy's automobile and Purdy wanted to know where the hubcaps were. Love exited the apartment and was shot five times. Eric Burton, who had also been inside Wallace's apartment, waited a short time, exited the apartment, and dragged Love back inside the apartment.
>
> Two people were in the process of leaving a church directly across the street from the situs of the murder. They saw three or four people congregated in front of Wallace's apartment. One person shot the victim. They saw the victim fall. The perpetrators of the murder ran away. Neither party could identify any of the individuals they saw since it was dark. Several witnesses testified they heard five or six shots in rapid succession.

Love appeared to be in excruciating pain. He was breathing heavily. He began to moan and gasp for breath. Later, he began "fading in and out." When Burton and Thompson would call Love's name, he would respond, but would then lapse back into an unconscious state. He died later that night at the hospital. Shortly after Love was dragged inside the apartment, he told Burton and Thompson twice that "Bushwick" shot him.[1] The defendant's nickname is Bushwick. The victim obviously knew the defendant.

An autopsy revealed the victim died of multiple gunshot wounds. Three of the wounds discovered by the pathologist were superficial. One projectile struck the victim's spine and stopped. The remaining projectile struck the victim on the right side of the chest, bruised the right lung, passed through both chambers of the heart, and struck the aorta as well. This latter wound was the cause of the victim's death.

The defendant gave the police a statement. He admitted to the officers that he was present when the victim was shot. However, he denied he was the person who shot the victim. When the shooting began, the defendant ran and hid in a grove of trees behind a grocery store.

State v. Carlos Coman, Madison County, No. 02C01-9611-CC-00412 (Tenn. Crim.

App., filed November 17, 1997, at Jackson), perm. to appeal denied (Tenn. 1998).

Following affirmance of his conviction, the petitioner filed a pro se petition alleging various grounds for post-conviction relief. After review of this petition, the trial court appointed counsel, and, thereafter, counsel filed an amended petition for post-conviction alleging ineffective assistance of counsel. The trial court conducted a hearing on April 19, 1999, and dismissed that petition. At this hearing, the trial court heard only the testimony of the petitioner's trial counsel, Jan Patterson.

Patterson testified to her representation of the petitioner. While explaining that her pre-trial preparation was adequate, she described three areas in which her performance was, admittedly, deficient:

**1-At Trial**
Patterson testified that the State's decision to nolle prosequi a co-defendant, Byron Purdy, seriously disturbed her trial strategy. She said that when Purdy dropped from the case, she should have requested a continuance in order to get more time to formulate another defense strategy. However she did not. Beyond this, she

_____
[1] This statement was introduced at trial as a "dying declaration."

-3-

did not specify how her strategy would have changed absent one matter: the sudden loss of a witness subpoenaed only by Purdy. Patterson testified that this witness could have provided testimony impeaching the credibility of the victim.[2] After Purdy dropped out, however, this witness was lost.

**2-At Sentencing**
Patterson testified that her performance at sentencing was deficient on account of certain prescription medication that she was taking at the time. Days before, Patterson was involved in a car accident and was prescribed painkillers. Again, she testified that unmedicated she would have done things differently; however, she could not specify exactly how her strategy would have changed.

**3-On Appeal**
Patterson testified that her performance on appeal was deficient as one of her issues was deemed waived by this Court. It was waived on account of her failure to make appropriate citations to authority and to prepare a record sufficient for review. This issue involved evidence, excluded at trial, that would have allegedly revealed a motive for the Purdys, rather than Coman, to kill the victim.

As stated before, at the close of this testimony, having also heard argument from both sides, the trial court, by written order, denied the petition finding that:

(1) The issues raised by the petitioner that deal with sentencing and issues on direct appeal are denied because they are not cognizable at habeas and have been waived.

(2) The issue regarding counsel's performance at closing argument is denied because the petitioner has not established prejudice.

(3) The issue regarding counsel's performance at sentencing, while more serious, is denied because the petitioner has not established prejudice.

(4) The issue regarding counsel's failure to ask for a continuance is denied because the petitioner has not established prejudice.

(5) The issues raised regarding deficiencies in counsel's performance upon appeal are waived as no proof was presented at the hearing.

## ANALYSIS

The defendant's sole argument alleges ineffective assistance of trial counsel. This Court reviews a claim of ineffective assistance of counsel under the standards of Strickland v. Washington, 466 U.S. 668 (1984) and Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975). The petitioner has the burden to prove that (1) the

---

[2] That witness would have testified that the victim had marijuana in his rectum at the time of the murder. As we discuss later, Patterson testified that this testimony would have been used to impeach the victim's credibility.

-4-

attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to the defendant so as to deprive him of a fair trial. See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990).

The test in Tennessee in determining whether counsel provided effective assistance is whether his performance was within the range of competence demanded of attorneys in criminal cases. See Baxter, 523 S.W.2d at 936. The petitioner must overcome the presumption that counsel's conduct falls within the wide range of acceptable professional assistance. See Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998), Strickland, 466 U.S. at 689; Alley v. State, 958 S.W.2d 138, 149 (Tenn. Crim. App. 1997). Therefore, in order to prove a deficiency, a petitioner must show that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms. See Strickland, 466 U.S. at 688; Henley v. State, 960 S.W.2d at 572, 579 (Tenn. 1997); Goad, 938 S.W.2d at 369.

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." See Strickland, 466 U.S. at 689. The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. See Goad, 938 S.W.2d at 369; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); Alley, 958 S.W.2d at 149; Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The second prong of Strickland's test requires a petitioner to show a reasonable probability that the result of the trial would have been different but for

the deficient representation. See Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

If afforded a post-conviction evidentiary hearing by the trial court, a petitioner must do more than merely present evidence tending to show incompetent representation and prejudice; the petitioner must prove actual allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). When an evidentiary hearing is held, findings of fact made by that court are conclusive and binding on this Court unless the evidence preponderates against them. See Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993).

Assuming arguendo that counsel's performance was ineffective, we review for prejudice. In the end, we conclude that the petitioner has failed to carry his burden to establish the requisite level of prejudice.

**At Trial**

First, while counsel describes her failure to ask for a continuance upon the state's decision to nolle prosequi Purdy and her resultant "deficient" performance as "prejudicial," this Court lacks the supporting evidence needed to agree with that conclusion. The only testimony that describes specifically how trial strategy might have changed involved one witness, a police officer. His testimony, had it been offered,[3] would have been used to impeach the credibility of the victim. He would have testified that the victim had marijuana in his rectum at the time of the murder. The victim's credibility was at issue as a major component of the evidence was a "dying declaration." However, as regards this impeachment evidence, first, its impeachment value is questionable at best. Second, the petitioner had and used other avenues of impeachment.[4] And third, medical testimony describing an "air

---

[3] Presumably, the continuance would have allowed counsel time to subpoena this witness.

[4] The petitioner impeached the victim's credibility with two prior convictions.

pocket" in the victim's rectum nevertheless got before the jury. Therefore, the loss

of this witness did not significantly prejudice the defendant. Any other "prejudice"

the petitioner perceives is simply not proved. Broad, conclusory assertions

unsupported by particularized evidence or argument do not fulfill the defendant's

burden on prejudice.

## At Sentencing

Second, while petitioner alleges ineffectiveness and prejudice at sentencing,

no testimony indicating how sentencing strategy would have been changed was

adduced at the hearing. Instead, the testimony established that counsel submitted

mitigating factors at sentencing and argued the applicability of those factors.

Beyond this fact, counsel's testimony is again merely conclusory and unsupported.

When petitioner asks this Court to find ineffectiveness and prejudice, we require

more. Here, counsel did <u>not</u> testify that she failed to make any one particular

argument but, medicated and confused, she forgot. Instead, she testified:

> What I felt very badly about was, at the time of the sentencing hearing
> itself, that I did not do a better job, or do the job I would have
> preferred to have done in presenting the sentencing arguments to the
> Court.

While the allegations are "serious," as the trial court noted, there is no evidence nor

convincing argument to support a finding of prejudice. Counsel's belief that a 15

year sentence, rather than 20 year one, would have been more appropriate, does

not meet the burden.

## On Appeal

Third, while petitioner argues that counsel's failure on appeal resulted in

prejudice, we must disagree. Counsel, in her appellate brief, failed to make the

appropriate citations to authority and to prepare a record sufficient for review and

therefore lost an issue on appeal: the trial court's exclusion of a plea agreement

involving the victim. Apparently, counsel now believes that the plea agreement, if

introduced at trial, would have revealed a motive for the Purdys, rather than the petitioner, to kill the victim. While the merit of this conclusion is unclear, it is clear that at trial a motive for the Purdys to kill the victim was already presented: The Purdys apparently believed that the victim had stolen their hubcaps. In fact, that seems to have been the state's theory of the case: The Purdys had the motive, the petitioner went along with them to find the victim and then, with the Purdys at his side, shot the victim. Whatever the case, petitioner's argument ignores the fact that no matter who had the motive to kill the victim, the petitioner was alongside the Purdys at the time of the killing. And therefore, just as the "hubcap motive" necessarily did not exclude the petitioner as the killer, neither does the "plea agreement motive." How counsel therefore could have used this "plea agreement motive" to obtain some other verdict is entirely unclear. Again, this Court, without further supporting argument or evidence, would be left to speculate, and speculation is not proper basis for setting aside jury verdicts. Therefore, we conclude that the petitioner has failed to meet his burden of establishing the requisite level of prejudice.

In conclusion, the petitioner has failed to demonstrate that counsel's performance, at trial, at sentencing, or at appeal, resulted in the requisite level of prejudice. And while the petitioner seeks to analogize his situation with State v. Zimmerman, 823 S.W.2d 220 (Tenn. Crim. App. 1991), we fail to discern any persuasive similarity. Zimmerman involved an attorney who failed to present crucial evidence in support of the previously announced defense theory, while petitioner's case simply states vague and ambiguous second-guesses and regrets.

The state's case clearly put the petitioner upon the scene of the murder. The petitioner's own statement and the victim's dying declaration are powerfully incriminating. The case is strong, and the errors complained of would not have affected the outcome. Accordingly, we see no merit in the petitioner's claim.

-8-

**CONCLUSION**

Accordingly, we AFFIRM the trial court's order denying the petition.

_____ _____
_____JOHN EVERETT WILLIAMS, Judge

CONCUR:


_____
GARY R. WADE, Presiding Judge



_____
NORMA McGEE OGLE, Judge