IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 15, 2002

## DAVID LYNN MCCLURE v. STATE OF TENNESSEE

**Post-Conviction Appeal from the Criminal Court for Davidson County**
**No. 94-A-590     Cheryl Blackburn, Judge**

---

### No. M2001-02907-CCA-R3-PC - Filed June 24, 2003

---

The Petitioner, David Lynn McClure, was indicted on March 28, 1994 for one count aggravated sexual battery and two counts of rape of a child. He was convicted by a jury of aggravated sexual battery, rape of a child and attempt to commit the rape of a child. He received an effective sentence of 30 years as a Range I offender. The petitioner appealed his convictions and sentence, and they were affirmed. See State v. David Lynn McClure, No. 01C01-9505-CR-00145, 1997 WL 211254 (Tenn. Crim. App at Nashville, Apr. 30, 1997). The petitioner filed a pro se petition for post-conviction relief on October 14, 1999. Following an evidentiary hearing counsel was appointed and an amended petition was filed. This petition was denied on October 31, 2001. The petitioner then filed a notice of appeal on November 15, 2001. In this appeal the petitioner raises the issue of whether the post-conviction court correctly dismissed his petition for post-conviction relief concluding that he received effective assistance of counsel. After a review of the record we find that petitioner has failed to carry his burden of showing that the evidence preponderates against the findings of the post-conviction court. Accordingly, the judgment of the lower court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Kurt O. Kosack, Brentwood, Tennessee, for appellant, David Lynn McClure.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General, Victor S. Johnson, District Attorney General; and Roger Moore, Assistant District Attorney General, for appellee, State of Tennessee.

# OPINION

## Background

The defendant lived in a Nashville apartment with his wife and two children. The victim, the defendant's stepdaughter, was four years of age when the crimes in question occurred. Two of the crimes occurred while the defendant and the victim were laying under a blanket on a couch watching television. On both occasions the victim was wearing a nightgown and underwear. On one of these occasions, the victim testified the defendant touched her groin area with his finger. According to the victim, the defendant touched her "inside and outside" of her "bathroom part" and it hurt her. On the other occasion, the defendant made the victim touch his penis under his clothing. She testified that it felt "nasty." Finally, the defendant went into the victim's bedroom during the night, pulled her underwear down, and placed his penis into the victim's vagina. He also digitally penetrated the victim. According to the victim, the defendant's penis was "straight" as opposed to being "bent down."

On the evening of November 3, 1993, Mrs. McClure was sitting at the end of the couch. The victim and the defendant were laying beneath a blanket at the other end of the couch. Mrs. McClure testified it was common for the family to sit or lay on the couch together and watch television. On this evening, she observed some "fidgety" movement under the blanket. There was "a lot of repositioning" as if "they were uncomfortable." Her "gut instinct" made her feel uncomfortable about what she had observed. Two days later, the defendant and the victim were again laying on the couch beneath the blanket watching television. Mrs. McClure observed the same type of motion between the defendant and her daughter. Later that day, Mrs. McClure asked the victim if the defendant had touched her. The victim told her what had occurred. Mrs. McClure called her mother, Rose Pleasant, who resided in Illinois, and arranged for her and her two daughters to live with Ms. Pleasant. Mrs. McClure had to wait until she received her paycheck before going to her mother's home.

Ms. Pleasant took the victim to a doctor to be examined. The person who examined the victim testified that there was no physical evidence of penetration. However, the witness stated it was possible for a child to be slightly penetrated with the male sexual organ or digitally penetrated without there being physical evidence of either penetration.

Ms. Pleasant and Mrs. McClure had an argument shortly after Mrs. McClure's arrival in Illinois. Mrs. McClure and her children returned to Nashville four days after they arrived in Illinois. Shortly after Mrs. McClure and the children returned to Nashville, Ms. Pleasant called the Department of Human Services and reported the victim had been sexually abused. A social worker went to the school the victim was attending and interviewed the victim regarding the allegations of sexual abuse. Subsequently, the social worker and a Metropolitan police officer went to the McClure apartment. When the defendant arrived home from work, the officer took the defendant to his unmarked police cruiser. He read the defendant the *Miranda* warnings. The defendant gave the officer a voluntary audio taped statement while sitting in the police cruiser. The audio tape was played for the jury accompanied by a typewritten transcript of the recording.

When the defendant was asked by the police officer if he touched the vaginal area of the victim while laying on the couch, the defendant answered:

Yeah ... I ... I'm trying to be honest ... I ... it's ... I ... like I told my wife, I possibly may have ... if I have, my intentions wasn't of that ... anything to that ... but it wasn't I don't know how to explain myself ... I don't ... that wasn't my intent ... or anything ... may have accidentally done something like that ... that wasn't, you know.

The defendant also told the police officer he went into the victim's bedroom to check on the baby when he noticed the victim had partially fallen out of her bed. When he picked her up, he touched her "down in the vagina." The following colloquy occurred between the defendant and the police officer:

Q: Okay, when you touched her ... when you reached up under her gown and touched her on the vagina over her panties, did you penetrate her vagina with your fingers?
A: I don't know ... I....
Q: Is it possible you did that?
A: I don't know ... possibly could of, I don't know ... I ...
Q: Have you ever touched her vagina under her panties?
A: I've ... I ... I may have ... of my ... I ... I don't know ... I just ...
Q: Now wait a minute now, now you know, if you did or you didn't.
A: Well, I mean ... I may ... I think I did ... but I don't, you know ... I ...
Q: Have you ever put your hand inside her panties?
A: No ... I ... no ... I ... I ... her ... wait ... when she was laying there ... when she ... I picked her up ... you know, her legs went apart and hand her ... her panties was too, kinda loose ...
Q: You put your hand inside her panties?
A: Well they was apart and I picked her up right there and my hands went th ... my fingers went there ... I was like, I put her on her bed ...
Q: So your fingers went where?
A: Where her vagina is....

* * * *

Q: Okay ... did you ... did your finger go inside her vagina?
A: I think so ... I'm not sure....

* * * *

Q: Okay. Have you ever touched her vagina with your ... penis?
A: No, no, no.
Q: Okay ... have you ever touched her vagina any other time besides that night?
A: No. No. I haven't that night and then on the couch I guess that's ...

-3-

\* \* \* \*

Q: Okay. You feel like you you've got a problem with that?
A: No ... I ... I ... I don't know, I just ... I don't know why, I just ... I feel, you know, so bad ... I ... I don't even know why I just did ... did that. I feel so guilty.

\* \* \* \*

Q: What you're saying is that you could have touched her more times on the couch than you were saying ...
A: If ... if I did ... I ... I ... I'm not aware, if I did ... uh ... she ... I don't know.

At trial, the defendant testified he was "quite sure" he never touched his stepdaughter's genital area in any way. He further stated that he lied to the police officer during the interview in the police cruiser. Based on the foregoing the jury found the defendant guilty as noted above.

## Post-Conviction Hearing

At the petitioner's post-conviction hearing he testified that he met with trial counsel approximately two times prior to trial. During those discussions the petitioner stated that he and trial counsel did not discuss trial strategy or the State's witnesses. He also testified that he had no knowledge whether trial counsel interviewed any of those witnesses, causing his case to be "one-sided." Counsel testified that he kept a log of his time spent on this case. In that log he noted that other than significant telephone calls with petitioner, he and petitioner met personally eight times prior to the trial. In addition, the petitioner felt that trial counsel did not have adequate time to prepare for his trial and that he failed to interview the victim or the victim's maternal grandmother. Trial counsel stated that he did not interview the child sex abuse victim because it was difficult for defense lawyers to contact such victims. Moreover, the lawyer stated that he did not interview the victim's maternal grandmother because she was extremely hostile toward the petitioner and not likely to produce any exculpatory material. Petitioner also claims that a letter written by his wife, Christina McClure, was important to his case because it showed that Ms. McClure was having an affair prior to the allegations in his case. Petitioner testified that he never told trial counsel about the letter but that his mother did tell counsel. The petitioner's mother corroborated her son's testimony on this point. However, trial counsel testified that even though he asked to see the letter he was never given or shown a copy by either the petitioner or the petitioner's mother.

Petitioner alleges that trial counsel failed to cross-examine Ms. McClure regarding funds she might have received through the Criminal Injuries Compensation Act. Counsel testified that the relatively small amounts available to victims in this state are not, in his opinion, a sufficient reason

to commit perjury. Counsel further testified that he did not recall discussing the Criminal Injuries Compensation Act with Petitioner. Counsel stated that there was no reason to discuss ways to potentially impeach Ms. McClure's credibility at the time because she and petitioner remained friendly until the time of the verdict.

On the issue of whether trial counsel adequately cross-examined the victim, Petitioner testified that counsel should have questioned the victim on whether anyone had been talking to her, telling her what to say at trial. On the other hand, trial counsel testified that he did not have an independent recollection of his cross-examination of the victim. He did state that if there was any reason to believe that the victim would have testified that she was coached in her testimony, he would have brought that out during cross-examination. Counsel stated that it is very difficult to ask a child victim "if people had been talking to her and telling her and maybe leading her into certain questions and certain answers that you might anticipate at trial." He stated:

> "Well, I guess my answer to your question is maybe it could have been productive, although it also, that would be a bit of a longshot. The counter part of this is that as the adult male criminal defense lawyer cross-examines a five-year-old critically, one spreads some malice across the courtroom and that overflows, some people think, into the jury box and across the defendant, so if I have some reason to believe that a rigorous cross-examination of the five-year-old would have led to her recantation, I would have pursued it. I didn't think that was a likely prospect.

The petitioner did not offer any proof at the post-conviction hearing that the victim was coached in her testimony.

Finally, Petitioner states that trial counsel was ineffective by not employing an expert witness to testify concerning the suggestibility of children during interviews concerning alleged child abuse. Petitioner testified that the State had an "expert" so he didn't understand why he didn't have one. Petitioner admitted that he and trial counsel did not discuss hiring an expert. Trial counsel testified that it would be questionable as to whether an expert opinion would have been admissible. He also stated that there was no significant "child sex abuse-type testimony presented to the jury." Counsel indicated in his testimony that he believed the current status of law to be that the State could not introduce testimony as to the so-called child sexual abuse syndrome and therefore defense could not introduce testimony which would rebut such expert testimony.

## Analysis

To determine whether counsel provided effective assistance at trial, the court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To succeed on a claim that his counsel was ineffective at trial, a petitioner bears the burden of showing that his counsel made errors so serious that he was not functioning counsel as guaranteed under the Sixth Amendment and that the deficient representation prejudiced the petitioner, resulting in a failure to produce a reliable

result. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); <u>Cooper v. State</u>, 849 S.W.2d 744, 747 (Tenn. 1993); <u>Butler v. State</u>, 789 S.W.2d 898, 899 (Tenn. 1990). To satisfy the second prong, the petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact-finder would have had reasonable doubt regarding petitioner's guilt. <u>Strickland</u>, 466 U.S. at 695.

If afforded a post-conviction evidentiary hearing by the trial court, a petitioner must do more than merely present evidence tending to show incompetent representation and prejudice; he must provide his factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). When an evidentiary hearing is held, findings of fact made by that court are conclusive and binding on this Court, unless the evidence preponderates against them. <u>Cooper</u>, 849 S.W.2d at 746.

When reviewing trial counsel's actions, this Court should not use the benefit of hindsight to second-guess trial strategy and criticize counsel's tactics. <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982). A "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland v. Washington</u>, 466 U.S. at 689, 104 S. Ct. at 2065. Deference is given to trial strategy or tactical choices if they are informed ones based upon adequate preparation. <u>Hellard</u>, 629 S.W.2d at 9.

In the instant case the post-conviction court entered a lengthy order and memorandum denying the petition for post-conviction relief. On each point raised in the petition the post-conviction court determined that trial counsel was simply more credible than the petitioner. Moreover, the post-conviction judge, and for that matter this Court, find that counsel's decisions were reasonable and made with the competence expected of criminal defense attorneys. Under these circumstances we are of the opinion that the judgment of the lower court must be affirmed.

<u>Conclusion</u>

For the foregoing reasons, we find that the petitioner's post-conviction challenge lacks merit. Accordingly, the judgment of the lower is AFFIRMED.

_____

JERRY L. SMITH, JUDGE