IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 7, 2023

**DETRICK TURNER v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 14-03220       Lee V. Coffee, Judge

_____

**No. W2022-01494-CCA-R3-PC**

_____

Petitioner, Detrick Turner, appeals the denial of his post-conviction petition, arguing that the post-conviction court erred in finding that he received the effective assistance of counsel.  He argues that appellate counsel was ineffective for failing to communicate and failing to raise additional issues on appeal.  Following our review of the entire record, including the briefs of the parties, and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and JOHN W. CAMPBELL, SR., J., joined.

Detrick Turner, Nashville, Tennessee, *pro se* (on appeal); Shae Atkinson, Memphis, Tennessee (at post-conviction).

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Facts and Procedural Background**

On July 3, 2014, Petitioner was indicted for the first degree murder of his wife.  The indictment alleged that during the early morning hours of February 21, 2014, Petitioner killed his wife, Sharice Turner, by shooting her in her face with his .40 caliber handgun.  At trial, Ms. Paula Cowan, Petitioner's neighbor, testified that she and her boyfriend were

awakened by their outdoor motion detector, and they saw Petitioner walking through their yard. *State v. Turner*, No. W2018-00726-CCA-R3-CD, 2019 WL 1783487, *1 (Tenn. Crim. App. April 23, 2019). When Ms. Cowan met Petitioner outside he appeared calm, and he told her that there was nothing wrong, but he "can't get Shari up." *Id.* Ms. Cowan walked with Petitioner from her driveway to his home. *Id.* Because Petitioner did not want his children to see the victim, Ms. Cowan took the children to her home to stay with her boyfriend. *Id.* When Ms. Cowan returned to Petitioner's home, he was on his cell phone and she heard him say, "Bro, call me back. Me and Shari got into it, and the handgun went off and hit her upside the head." *Id.* Petitioner then called 911 and remained on the line until the police officers arrived. *Id.* Ms. Cowan entered the den where the victim was reclined in a chair under a blanket and appeared to be asleep. *Id.* However, Ms. Cowan noticed blood coming from the victim's mouth and determined that she did not have a pulse. *Id.* Ms. Cowen testified that at that point, Petitioner appeared to "panic," and grabbed the victim telling her to get up. *Id.* Ms. Cowan noticed a handgun on the couch and placed it in a box on top of the garbage can. *Id.* Petitioner moved the handgun back because he "wanted the police officers to see where the handgun was located." *Id.*

Memphis Police Department ("MPD") officer Andrew Hurst interviewed Petitioner after his arrest. *Id.* at *2. Petitioner stated that the victim had the handgun in her hand when he arrived home that night and he did not want her to have the handgun because there was not a safety mechanism on it. *Id.* Petitioner said that he grabbed the handgun by the barrel and a struggle ensued, during which the handgun went off twice, with the second shot hitting the victim in the face. *Id*. Officer Hurst testified that he did not think Petitioner's version of events to be possible because the handgun would not be able to fire twice if the barrel was being held. *Id.*

A forensic toxicology expert testified that the victim had substantial amounts of alcohol and diphenhydramine, commonly used in sleeping aids, in her system which would have "affected her muscular coordination and her judgment and would have caused her to be lethargic and likely pass out." *Id.*

MPD officers obtained a search warrant for the home and during the search, they observed a possible bullet hole in the couch and recovered a number of items including a .40 caliber handgun found near the victim and a spent .40 caliber bullet underneath the couch. *Id.*

On November 17, 2017, a jury convicted Petitioner of the lesser included offense of second degree murder. On February 28, 2018, the trial court sentenced Petitioner to twenty-two years of confinement. On March 22, 2018, the trial court heard and denied Petitioner's motion for new trial, which included an argument that the search warrant executed in the case was invalid. The sole issue Petitioner raised on direct appeal was that

his sentence was excessive. *Id.* at *1. On April 23, 2019, this court affirmed Petitioner's sentence. *Id.* at *5. Petitioner did not file a Rule 11 application to appeal to the Tennessee Supreme Court.

*Motion to Suppress*

Prior to trial, on April 7, 2017, trial counsel filed a motion to suppress the evidence seized pursuant to the search warrant, arguing that the warrant was invalid because "the affidavit in support of the warrant was altered after its issuance and execution," "the supporting affidavit failed to state the name of [Petitioner]," and "the search warrant . . . states an unknown person as being in possession of the listed property[.]"

At the suppression hearing, MPD Sergeant Terrell Hunt testified that as part of the homicide investigation, he was tasked with obtaining a search warrant for Petitioner's home. He filled out a search warrant template which was a one-page document with the affidavit in support of the search warrant at the top of the page and the search warrant at the bottom of that same page. He swore to the affidavit before a judicial commissioner who found probable cause and issued the search warrant. According to MPD's "Felony Response Supplement," the search warrant was assigned warrant number 6355. Prior to execution of the warrant, an officer took a photo of the search warrant at the scene, as sworn and issued. Sergeant Hunt testified that after he executed the warrant and left the scene, he realized that "there was a big mistake in [the warrant]. I had the wrong name in it, and the date of birth – I mean, the age. I had somebody else's name in it by mistake." He "white[d] it out, wrote the correct name in, and the correct age" to correct his "honest mistake." Petitioner's name and correct address were used throughout the body of the affidavit. The search warrant stated:

> Proof by affidavit having been made before m[e] by Sgt. T. Hunt . . . that there is probable cause for believing that the unknown black female is in possession of the following described property . . . you are therefore commanded to make immediate search of the person and premises herein above described . . . ."

Sergeant Hunt explained that the "unknown black female" was Petitioner's neighbor, Paula Cowen. A copy of the search warrant was exhibited to Sergeant Hunt's testimony.

The trial court found that the incorrect name in the affidavit was a "clerical mistake," and denied the motion to suppress stating that Petitioner's name was incorrect in one spot, but correct in "four or five other spots" and that "should not invalidate a lawfully, legally issued warrant or affidavit." The trial court relied on *State v. Davidson*, in which the Tennessee Supreme Court:

- 3 -

adopt[ed] a good-faith exception for the admission of evidence when a law enforcement officer has reasonably and in good faith conducted a search within the scope of a warrant the officer believes to be valid, but is later determined to be invalid solely because of a good faith failure to comply with the affidavit requirement[s.]

509 S.W.3d 156, 185-86 (Tenn. 2016).  Further, the trial court noted that this court's opinion in *State v. Szabo* was "squarely on point with this case."  *See State v. Szabo*, No. W2015-02264-CCA-R9-CD, 2016 WL 5851923 (Tenn. Crim. App. Oct. 6, 2016) (holding that one instance of the incorrect name in the affidavit is clerical error and does not invalidate a search warrant).  Finally, the trial court found that the "'unknown black female' is information that was not changed in this template."  The trial court also noted that "Sergeant Hunt did not have to do anything, under current Tennessee law, to correct the mistake, once he realized the mistake that [the judicial commissioner] did not realize.  He did not have to do anything at all.  He could have just left it as it was."

*Post-Conviction Hearing*

On July 23, 2019, Petitioner filed a *pro se* petition for post-conviction relief.  Post-conviction counsel was appointed and filed an amended petition for post-conviction relief on July 27, 2021.  Petitioner alleged that trial counsel was ineffective because she did not subpoena witnesses from the clerk's office to show that the search warrant for his home was never returned and she did not conduct adequate pre-trial investigation and interview potential prosecution witnesses.[1]  Petitioner alleged that appellate counsel was ineffective because he did not communicate with Petitioner and did not raise "significant and obvious issues on appeal."  Specifically, Petitioner alleged that appellate counsel was ineffective for not appealing the trial court's denial of Petitioner's motion to suppress all evidence obtained from the search warrant.  As an exhibit to his post-conviction petition, Petitioner included a copy of a letter he received from appellate counsel advising Petitioner that appellate counsel had received a thirty-day suspension from the practice of law in Tennessee.

At the post-conviction hearing, Jacqueline Watkins, a Shelby County general sessions clerk, described the typical process of an officer's return of a search warrant and explained that when a warrant is returned, "it's supposed to be stamped and dated and filed[,]" and then the warrant is given a number for tracking.  Ms. Watkins testified that in

---

[1] On appeal, Petitioner challenges the post-conviction court's ruling only as it relates to appellate counsel; thus our opinion will address trial counsel's testimony and performance solely in the context of the search warrant that is the subject of Petitioner's claims regarding appellate counsel.

Petitioner's case, there was no time or date stamp on the search warrant. She also stated that warrant number 6355 was in their books, but it was not the warrant in Petitioner's case; another name was entered under that number.

Christina Max, a Shelby County criminal court clerk, testified that when a case is moved from general sessions to criminal court, a general sessions clerk "normally walks their paperwork up to us for our grand jury section" and any documents from general sessions would be placed in the criminal court file. Shelby County criminal court had no warrant number 6355; the criminal clerk warrant book "goes from 6099 and then it jumped over to 7,000. There are no numbers in between."

Trial counsel testified that after she was appointed to represent Petitioner, while reviewing discovery, she found a photograph of the search warrant as executed, and she observed that it bore a name different than Petitioner's. She had a copy of the returned warrant and noted that the name on the warrant had been changed and that there were no time stamps. Trial counsel began an investigation which included speaking to multiple people in the general sessions and criminal court clerks' offices to "try to establish the trail of the warrant." She knew the warrant had been signed by a commissioner, but she was unable to locate the warrant in either of the clerks' offices. Trial counsel spoke with Sergeant Hunt about the warrant and he could not explain the missing time and date stamps, but he maintained that he had properly returned the search warrant to the clerk's office. Trial counsel explained that she believed that "[e]ven if some clerk didn't stamp it, the fact that it was in my hands in an altered condition provided to me by the State in our discovery packet was a good indicator to me that it had been turned back in[.]" Based on her investigation, trial counsel filed a motion to suppress the items obtained as a result of the execution of the warrant.

On cross-examination, trial counsel agreed that "even though [the warrant itself] doesn't list [Petitioner], it does reference back . . . to the preceding paragraph, where it does list all of those facts relating to [Petitioner] and the address and the victim of the case[.]" Trial counsel's argument was that Sergeant Hunt's error was more substantial than a clerical error, but after the adoption of the good faith exception in Tennessee law, she "didn't really have a whole lot of ground to stand on as far as that argument went[.]"

Appellate counsel testified that he had practiced law for over forty years and had handled more than thirty criminal appeals. He did not have "any vivid recollection" of communicating with Petitioner about the issues that would be presented on appeal but he "took what [he] thought were the appealable issues from the motion for new trial." Appellate counsel acknowledged that Petitioner wanted additional issues raised on appeal, but after he reviewed the record, he was "kind of constricted by rules unless it's some type

of plain error."  When asked specifically why he did not raise the suppression issue, appellate counsel explained:

> I seem to remember I thought - - I thought it had been addressed earlier.  And I didn't think the Court [of Criminal Appeals] would take cognizance of it.
>
> . . .
>
> I do not [remember how it had already been addressed].  I think in the regular course of the business motion in court, but I just don't know.  I couldn't answer that for you right now.

On cross examination, appellate counsel explained that he thought "the most mature way of handling an appeal is to try to hit the [issues] that matter and may result in some favorable opinion."  When asked to describe how he would decide whether to appeal an adverse ruling on a suppression issue that was based "specifically [on] adverse law that's not in your favor[,]" appellate counsel explained:

> I am duty bound, as an appellate advocate, to bring up the adverse law, say well, Judge, this is against me, but what about this, where I can distinguish it.
>
> But if you can't distinguish it, I think it's better not to - - not to argue something that you just - - the law is just totally against you on.  Because at that stage, [the appellate court] . . . can't change the law anyway.  It would have to be a Supreme Court issue for actually changing the law.

Finally, appellate counsel agreed that if there had been a suppression issue addressed and preserved at trial, he would have reviewed the record and raised the issue if he thought there was a meritorious argument to be made.

Petitioner testified that trial counsel informed him that his name had been changed on the warrant, but until after trial, he was unaware of other issues with the search warrant. Petitioner testified that he would have wanted trial counsel to address additional issues that he had identified with the search warrant.[2]  Regarding appellate counsel, Petitioner stated "I received a letter saying that he was my appellate attorney.  I never heard from him after that."  Petitioner identified three letters that he sent to the Clerk of the Appellate Courts asking for updates on his case and providing his new incarceration location "[b]ecause [he]

---

[2] Again, because Petitioner has not raised trial counsel's performance on appeal, we will not expound on this portion of his testimony.

didn't have any contact with [appellate counsel]." Petitioner testified that had he been able to communicate with appellate counsel, he would have wanted additional issues to be raised, including the suppression issue based on his understanding of deficiencies with the search warrant.

On cross-examination, Petitioner agreed that the inventory listed on the evidence receipt matched the list of items on the search warrant. He also admitted that at trial, the State introduced a crime scene sketch of Petitioner's home that showed the locations of all the items that were seized pursuant to the warrant.

At the end of his testimony, Petitioner indicated that he had additional information to give to the post-conviction court. He had prepared a written statement. Rather than having Petitioner read the statement, the post-conviction court reviewed the twenty-one-page statement and entered it as an exhibit to the hearing. As relating to appellate counsel, Petitioner asserted that appellate counsel was "deficient for failing to consult and inform [him] of any issues relating to [his] direct appeal."

After hearing the evidence and arguments of the parties, the post-conviction court made oral findings and denied Petitioner's petition. On February 21, 2023, the post-conviction court entered a comprehensive written order with findings of fact and conclusions of law, and denied Petitioner post-conviction relief. Regarding appellate counsel's performance, the post-conviction court accredited appellate counsel's testimony, finding that appellate counsel's decision to raise only the one issue of excessive sentencing was "a proper tactical decision - - one that this [c]ourt will not second guess." The post-conviction court also found that Petitioner had not shown that he was prejudiced by appellate counsel's failure to appeal the denial of the motion to suppress because he did not identify any grounds that may have reversed the trial court's decision.

On October 21, 2022, Petitioner filed a premature *pro se* notice of appeal. By order of this court, the action was stayed until the post-conviction court entered a final judgment. The stay was lifted on March 10, 2023. Post-conviction appellate counsel filed a motion to withdraw due to a change in employment. This court granted that motion and remanded Petitioner's case to the trial court for appointment of substitute counsel. Petitioner subsequently filed a motion to proceed *pro se*. After remand to the trial court to address Petitioner's motion, the trial court found that Petitioner had "knowingly and intelligently waive[d] his right to counsel on appeal." Petitioner's *pro se* appeal of the denial of post-conviction relief is now properly before this court.

**Analysis**

On appeal, Petitioner raises two issues: "Whether appellate attorney was ineffective for failing to communicate and raise significant and obvious issues on appeal?" and "Whether the post-conviction court erred when it referenced the affidavit to cure the insufficient search warrant in the finding of the court?"

Regarding the first issue, Petitioner argues that appellate counsel did not fulfill his ethical duty to communicate with Petitioner which prevented Petitioner from "participat[ing] intelligently" in his appeal. Petitioner claims that appellate counsel was ineffective for raising the "uninformed issue" of an excessive sentence and that he was prejudiced because appellate counsel should have appealed the denial of the motion to suppress, which he asserts was more likely to have been successful on appeal. The State argues that Petitioner has not shown that the suppression issue would have been successful on appeal, regardless of appellate counsel's alleged lack of communication.

While Petitioner's second issue on appeal is difficult to decipher, we interpret this issue as a claim that the post-conviction court erred in its analysis of the validity of the search warrant in its order denying post-conviction relief. Because this argument relates to whether the suppression issue would have been successful on appeal, we will address both of Petitioner's issues together.

The right to the effective assistance of counsel is safeguarded by both the Constitution of the United States and the Constitution of Tennessee; therefore, it is cognizable under the Post-Conviction Relief Act. U.S. Const. amend VI; Tenn. Const. art. I, § 9; T.C.A. § 40-30-103 ("Relief under this part shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States."). A petitioner alleging the ineffective assistance of counsel "shall have the burden of proving the allegations of fact by clear and convincing evidence." T.C.A. § 40-30-110(f); *Dellinger v. State*, 279 S.W.3d 282, 291 (Tenn. 2009). Whether a petitioner asserts ineffective assistance of trial or appellate counsel, he bears the burden of showing that (1) counsel's performance was deficient and (2) the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Butler v. State*, 789 S.W.2d 898, 899 (Tenn. 1990). Failure to satisfy either prong is sufficient to deny relief. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004); *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) ("[I]f this Court determines that either prong is not met, we may forego consideration of the other prong.").

A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Pylant v. State*, 263 S.W.3d 854, 867 (Tenn. 2008) (citing *Finch*, 226 S.W.3d at 315). Thus, an appellate court is bound by the factual findings of the post-conviction court unless

the evidence in the record preponderates against those findings; but the post-conviction court's application of law to those factual findings is reviewed de novo with no presumption of correctness. *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (citing *Dellinger*, 279 S.W.3d at 293); *State v. Fields*, 40 S.W.3d 450,457-58 (Tenn. 2001)).

The test for ineffective assistance of counsel is the same for both trial and appellate counsel. *Strickland*, 466 U.S. at 687; *Campbell v. State*, 904 S.W.2d 594, 596-97 (Tenn. 1995). Namely, a petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was deficient in failing to adequately pursue or preserve a particular issue on appeal and that, absent counsel's deficient performance, there was a reasonable probability that the issue "would have affected the result of the appeal." *Campbell,* 904 S.W.2d at 597; *see also Carpenter*, 126 S.W.3d at 886-88.

The determination of which issues to raise on appeal is within the discretion of appellate counsel and "[a]ppellate counsel is not required to raise all issues that a defendant desires to raise on appeal." *Howard v. State*, 604 S.W.3d 53, 62 (Tenn. 2020); *Cooper*, 849 S.W.2d 744, 747 (Tenn. 1993). In fact, "experienced advocates have long emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible[.]" *Cooper*, 847 S.W.2d at 747 (quoting *Jones v. Barnes*, 466 U.S. 745, 751 (1983)). When a petitioner alleges ineffective assistance of counsel based on the failure to raise an issue on appeal, the appellate court must determine the merits of the unraised issue. *Carpenter*, 126 S.W.3d at 887; *see also Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999) (stating that counsel's performance cannot be deficient for failing to raise a meritless issue). To determine the merits, the appellate court should consider the following non-exhaustive list of questions:

1) Were the omitted issues "significant and obvious"?

2) Was there arguably contrary authority on the omitted issues?

3) Were the omitted issues clearly stronger than those presented?

4) Were the omitted issues objected to at trial?

5) Were the trial court's rulings subject to a deference on appeal?

6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7) What was appellate counsel's level of experience and expertise?

8) Did the petitioner and appellate counsel meet and go over possible issues?

9) Is there evidence that counsel reviewed all the facts?

10) Were the omitted issues dealt with in other assignments of error?

11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Carpenter*, 126 S.W.3d at 888 (quoting *Mapes*, 171 F.3d at 427-28). This court has held that the best way to convince the post-conviction court and the appellate court that an omitted issue had merit is to present a legal argument for the omitted issue. *McNutt v. State*, No. W2016-01086-CCA-R3-PC, 2017 WL 4004172, at *7 (Tenn. Crim. App. Sept. 8, 2017).

Petitioner alleges that appellate counsel's failure to communicate with him was the reason appellate counsel did not appeal the denial of the motion to suppress. While we note that the record includes appellate counsel's letter to Petitioner advising him that he had incurred a thirty-day suspension from the practice of law, the record does not include any information regarding the reason for the suspension. Further, as we conclude below, even if there had been a lack of communication between Petitioner and appellate counsel, the inclusion of the suppression issue would not have changed the outcome of Petitioner's appeal. *See Strickland*, 466 U.S. at 694.

Petitioner asserts that the suppression issue was "significant and obvious," and "clearly stronger" than the sentencing issue. He argues that the sentencing issue was "readily recognizable as devoid of merit" because the trial court imposed a within-range sentence for a Range One standard offender, but that the suppression issue would have led to the dismissal of his conviction. The State argues that the trial court was correct in applying the good faith exception to Petitioner's challenges to the search warrant and denying the motion to suppress. The State further argues that the post-conviction court correctly found that an appeal of the denial of the motion to suppress would not have changed the outcome of Petitioner's direct appeal.

In considering the *Carpenter* factors, appellate counsel testified at the post-conviction proceeding that he had over forty years of experience in criminal law, including criminal appeals. He reviewed the record and testified that in his experience, the sentencing issue was clearly stronger than the suppression issue. He did not raise the suppression issue on appeal because there was contrary authority on the issue. Appellate counsel testified that he could not ethically differentiate Petitioner's arguments from the adverse law.

- 10 -

As noted by the trial court, Petitioner's case is substantially similar to the *Szabo* case, which is contrary to Petitioner's arguments. In *Szabo*, the State appealed the trial court's granting of the defendant's motion to suppress on the basis that the wrong individual was named in the affidavit for search warrant. *Szabo*, 2016 WL 5851923, at \*2. The officer testified that he had used the format of a prior search warrant application and had unintentionally forgotten to replace the name in the affidavit for search warrant. *Id.* This court reversed the trial court's suppression of evidence found pursuant to the search warrant, holding that "one instance of an inconsistent name in the affidavit when there are five other correct references to the [d]efendant by name does not void the search warrant." *Id.* at \*4. Similarly, in the present case Sergeant Hunt testified that he had used a pre-formatted affidavit for the search warrant and unintentionally forgot to change the name to Petitioner's and to correct the reference to the "unknown black female." However, throughout the affidavit, Petitioner's name and other identifying information was correctly identified; thus "a common sense evaluation of the document would indicate an error based upon these facts." *Id.*

Additionally, prior to the suppression hearing, our supreme court carved out a good-faith exception to the warrant requirement in *State v. Davidson*, 509 S.W.3d 156 (Tenn. 2016), holding that "[w]hen an officer has complied with constitutional requirements to obtain a warrant, but in good faith failed to comply with the state statutory and rule affidavit requirements, societal interests are not advanced when the exclusionary rule applies to exclude evidence obtained from the search warrant." *Id.* at 186. In its order denying relief, the post-conviction court relied on *Davidson* in finding that Sergeant Hunt had made a good faith mistake on the affidavit and that Petitioner would not have been successful in the appeal of the motion to suppress. Appellate counsel testified that he had reviewed the record, including the trial court's denial of the motion to suppress, and could not differentiate Petitioner's case from adverse law. The evidence does not preponderate against the post-conviction court's factual finding that appellate counsel raised the only issue he thought was legitimate. *See Carpenter*, 126 S.W.3d at 893 n.11 ("Counsel must refuse to raise frivolous arguments that his or her client urges to be raised.").

Petitioner also claims that appellate counsel should have included other challenges to the search warrant on appeal. He argues that the search warrant did not particularly describe Petitioner or his address and that the post-conviction court erred in referring to the narrative in the affidavit to show that the warrant was for Petitioner's and his home. Petitioner also complains that the affidavit for search warrant included only "conclusory statements" which did not provide sufficient basis for a finding of probable cause.

The record supports the post-conviction court's finding that the Petitioner "has failed to identify any grounds upon which the Tennessee Supreme Court may have reversed the decision of the trial court[.]" Petitioner cannot show that he would have succeeded on

- 11 -

appeal had the suppression issue been raised. His argument that the suppression issue was more significant and obvious than the sentencing issue is without merit. There was no question the crimes occurred in the house Petitioner shared with his wife and their two children and that he shot and killed his wife. Petitioner reached out to his neighbors and involved the police by dialing 911. Accordingly, probable cause was not an issue in the suppression motion or at trial. Indeed, Petitioner advances no authority for overcoming this factual hurdle on post-conviction. Likewise, he has advanced no argument that he and his home should have been described with particularity where his name and address were correctly stated several times in the affidavit before and after Sergeant Hunt recognized his mistake.

Thus, after weighing the *Carpenter* factors, we conclude that Petitioner has failed to prove that appellate counsel's omission of the suppression issue on direct appeal "fell below an objective standard of reasonableness" to satisfy the deficient performance prong of the *Strickland* test. *See Strickland*, 466 U.S. at 688; *see also Mapes*, 171 F.3d at 413 ("Counsel could not be unconstitutionally ineffective for failing to raise these meritless arguments."). Petitioner is not entitled to relief.

## Conclusion

For the foregoing reasons, we affirm the judgment of the post-conviction court.

_____
JILL BARTEE AYERS, JUDGE

- 12 -